396 F.3d 136
EMPIRE HEALTHCHOICE ASSURANCE, INC., doing business as Empire Blue Cross and Blue Shield, Plaintiff-Appellant,v.Denise Finn MCVEIGH, as administratrix of the Estate of Joseph E. McVeigh, Defendant-Appellee.
No. 03-9098.
United States Court of Appeals, Second Circuit.
Argued: May 15, 2004.
Decided: January 14, 2005.

COPYRIGHT MATERIAL OMITTED Howard S. Wolfson, Morrison Cohen Singer & Weinstein, New York, New York (Anthony F. Shelly, Miller & Chevalier Chartered, Washington, D.C., on the brief), for Plaintiff-Appellant.
Thomas J. Stock, Stock & Carr, Mineola, New York, for Defendant-Appellee.
Before: SACK, SOTOMAYOR and RAGGI, Circuit Judges.
Judge SACK concurs in Judge SOTOMAYOR's opinion and in a separate opinion.
Judge RAGGI dissents in a separate opinion.
SOTOMAYOR, Circuit Judge.

1
Empire HealthChoice Assurance, Inc. ("Empire") appeals from a judgment entered in the United States District Court for the Southern District of New York (Cote, J.) dismissing for lack of subject matter jurisdiction Empire's contract action against Denise McVeigh, as administratrix of Joseph McVeigh's estate, for reimbursement of insurance benefits. Because the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901-8914, does not affirmatively authorize the creation of federal common law in this case, federal common-law rule-making is only appropriate if the operation of state law would "`significant[ly] conflict'" with "uniquely federal interest[s]." Boyle v. United Techs. Corp., 487 U.S. 500, 507, 508, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Because no such conflict has been demonstrated in this dispute, Empire's action arises under state, not federal, law. Accordingly, we affirm the district court's dismissal of the action for lack of subject matter jurisdiction. See 28 U.S.C. § 1331; Empire HealthChoice Assurance v. McVeigh, No. 03 Civ. 2728, 2003 WL 22171693 (S.D.N.Y. Sept.18, 2003).

BACKGROUND

2
The Federal Employees Health Benefits Act ("FEHBA") charges the United States Office of Personnel Management ("OPM") with negotiating and regulating health benefits plans for federal employees. See 5 U.S.C. § 8902(a). Pursuant to FEHBA, OPM entered into a contract in 1960 with the Blue Cross and Blue Shield Association ("BCBSA") to establish a nationwide fee-for-service health plan (the "Plan"), the terms of which are renegotiated annually.1 Plaintiff-appellant Empire is the entity that administers the Plan to federal employees in New York State.

3
Defendant-Appellee Denise Finn McVeigh ("McVeigh") administers the estate of Joseph E. McVeigh ("Decedent"), a former enrollee in the Plan. The Decedent suffered injuries in an accident in 1997 and received $157,309.06 in benefits from the Plan between 1997 and 2001, the year of his death. McVeigh subsequently brought state tort actions on behalf of herself, the Decedent and a minor child against the parties who had allegedly caused Decedent's injuries. McVeigh received $3,175,000 when the lawsuit settled in 2003.

4
Prior to the entry of the settlement, Empire became aware of the agreement and notified McVeigh that it had a lien on the Decedent's share of the settlement for $157,309.06. McVeigh agreed to place $100,000 of the Decedent's share of the settlement funds into escrow pending resolution of Empire's claims.

5
On April 18, 2003, Empire filed suit against McVeigh for $157,309.06 in the United States District Court for the Southern District of New York. The complaint was based on a subrogation and reimbursement provision contained in the Statement of Benefits of the Plan. Under this provision, an enrollee who receives benefits in connection with an injury in addition to compensation from a third party must reimburse the Plan the amount of benefits paid.2 Empire's complaint alleged that McVeigh breached this provision and sought a judgment declaring that pursuant to the Plan, FEHBA, its regulations and federal common law, Empire was entitled to reimbursement from McVeigh for the amount of benefits paid for Decedent's injuries.

6
McVeigh moved for dismissal of the action on the grounds that, inter alia, the district court lacked subject matter jurisdiction. In response, Empire claimed that the court had jurisdiction under 28 U.S.C. § 1331 because federal common law governed its reimbursement claim. In the alternative, Empire argued that the Plan itself constituted federal law. District Court Judge Denise Cote rejected both of Empire's theories and granted McVeigh's motion to dismiss for lack of subject matter jurisdiction on September 18, 2003. See Empire HealthChoice Assur., 2003 WL 22171693, at * 3-*5.

DISCUSSION
A.

7
We review de novo a district court's legal conclusions with respect to its subject matter jurisdiction. Gualandi v. Adams, 385 F.3d 236, 240 (2d Cir.2004). Empire claims that federal jurisdiction exists pursuant to 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1331 jurisdiction — that is, federal question jurisdiction — "exists where a well-pleaded complaint `establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d. Cir.2000) (quoting Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)); see also Marcus v. AT & T Corp., 138 F.3d 46, 52 (2d Cir.1998). Though the plaintiff is generally "the master of the complaint," id., a plaintiff cannot create federal jurisdiction under § 1331 simply by alleging a federal claim where in reality none exists. See Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 137 (2d Cir.2002). Subject matter jurisdiction will lie only where the court determines that "`the substance of [the plaintiff's] allegations raises a federal question.'" D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93, 100 (2d Cir.2001) (emphasis omitted) (citation omitted). The existence of a federal question must be determined solely by reference to the plaintiff's own claim — not by reference to "statements raised in anticipation or avoidance of possible defenses that may be interposed." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 304 (2d Cir.2004); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

8
FEHBA does not provide a federal statutory cause of action for insurance carriers to vindicate their rights under FEHBA-authorized contracts. Thus, federal jurisdiction exists over this dispute only if federal common law governs Empire's claims. See Woodward Governor Co. v. Curtiss-Wright Flight Sys., Inc., 164 F.3d 123, 126 (2d Cir.1999) ("It is beyond dispute that if federal common law governs a case, that case presents a federal question within the subject matter jurisdiction of the federal courts, just as if the case were governed by a federal statute."). The ability of federal courts to fashion federal common law, however, is "severely limited." In re Gaston & Snow, 243 F.3d 599, 606 (2d Cir.2001); see also O'Melveny & Myers v. FDIC, 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (stating that the "cases in which judicial creation of a special federal rule would be justified ... are ... few and restricted" (citation and internal quotation marks omitted)). Absent congressional authorization, see Texas Indus. v. Radcliff Materials, Inc., 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), courts may only create federal common law where the operation of state law would (1) "`significant[ly] conflict'" with (2)" `uniquely federal interests,'" Boyle v. United Techs. Corp., 487 U.S. 500, 507, 508, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); see also O'Melveny, 512 U.S. at 87, 114 S.Ct. 2048; Woodward, 164 F.3d at 127. These circumstances were present, for instance, in Boyle, where the Supreme Court held that federal common law provided a defense shielding a federal defense contractor from liability under state law for defective design. 487 U.S. at 509-12, 108 S.Ct. 2510. The "state-imposed duty of care," the Court found, was "precisely contrary" to a duty imposed by the government contract. Id. at 509, 108 S.Ct. 2510.

9
Empire argues that its contract dispute with McVeigh satisfies the "uniquely federal interests" prong of Boyle. Reimbursement, Empire explains, directly affects the United States Treasury and the cost of providing health benefits to federal employees. Moreover, Empire contends, Congress has expressed its interest in maintaining uniformity among the states with respect to the benefits of its health plans.

10
We need not address these arguments, because we find that regardless of the strength or importance of the federal interests at stake, Empire has failed to demonstrate that the operation of New York state law creates an "an actual, significant conflict" with those interests. Woodward, 164 F.3d at 127; see also id. ("[I]n disputes between two private parties, federal courts ... have shown a marked reluctance to displace state law by finding a significant conflict with a federal interest."). Tellingly, Empire's briefs on appeal fail to mention a single state law or state-imposed duty that runs contrary to the federal interests asserted in this case.

11
Because it cannot identify any way in which the operation of state law creates an actual conflict, Empire is left to speculate about the various harms that "might" result from state-by-state adjudication of suits brought by insurance carriers under FEHBA-authorized contracts. Empire argues, for example, that state law would undermine the federal interest in uniformity because enrollees in some states "might" successfully avoid reimbursement while others would have to repay. Empire also contends that uncertainties associated with the application of state law "might" reduce the source of funds available to defray overall costs of paying benefits. These speculations do not suffice to satisfy the conflict prong of Boyle. See Woodward, 164 F.3d at 127 ("[A]n actual, significant conflict between a federal interest and state law must be specifically shown, and not generally alleged." (internal quotation marks and citation omitted)).

12
The Fourth Circuit reached a different conclusion in Caudill v. Blue Cross & Blue Shield of North Carolina, Inc., 999 F.2d 74 (4th Cir.1993). The Caudill court found that the application of state law "would result in a patchwork quilt of benefits that varied from state to state under the same contract because of the vast differences in the common law of contracts from state to state." Id. at 79. Thus, the court held that the case presented a significant conflict between the federal interest in uniformity and state law. Id.; see also id. at 79 ("[T]he very application of state contract law would undermine the uniformity envisioned by Congress when it delegated the authority to interpret health benefit contracts to OPM."). The Caudill court, however, cited no sources for its sweeping claim that "vast difference [s]" existed in the common law of contracts among the states. Id. The Supreme Court reached the opposite conclusion less than two years later in a dispute involving the Airline Deregulation Act of 1978. See American Airlines, Inc. v. Wolens, 513 U.S. 219, 233 n. 8, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In Wolens, the Court observed that "[b]ecause contract law is not at its core diverse, nonuniform, and confusing," there was "no large risk of nonuniform adjudication inherent in [s]tate-court enforcement of the terms of a uniform agreement prepared by an airline and entered into with its passengers nationwide." Id. (second alteration in original) (internal quotation marks and citations omitted). In light of Wolens, we see no reason to assume as a general matter that a conflict necessarily exists between the operation of state contract law and the federal interests in uniformity underlying FEHBA. Because Empire has not demonstrated an "actual, significant" conflict between New York state law and the federal interests underlying FEHBA, see Woodward, 164 F.3d at 127, we hold that the dispute between Empire and McVeigh fails to satisfy the conflict prong of Boyle.

B.

13
We recognize the possibility that at a later stage in the proceedings, a significant conflict might arise between New York state law and the federal interests underlying FEHBA, such that the dispute would satisfy both prongs of Boyle. If, for example, McVeigh were to defend herself in reliance upon a state law that was meant to advance a particular state policy, Empire could argue that such state law — whether statutory or common law — conflicts with federal interests and requires the application of federal common law. This possibility, however, is insufficient to confer federal jurisdiction. See Briarpatch Ltd., 373 F.3d at 304 ("The claims established by the well-pleaded complaint must necessarily be determined from the plaintiff's statement of his or her own claim, not including statements raised in anticipation or avoidance of possible defenses that may be interposed.") (emphasis added); see also Aetna Health Inc. v. Davila, ___ U.S. ___, 124 S.Ct. 2488, 2494, 159 L.Ed.2d 312 (2004); City of Rome v. Verizon Communications Inc., 362 F.3d 168, 177 (2d Cir.2004). Thus, it would be up to the state court to apply federal common law. See Charles Dowd Box Co., Inc. v. Courtney, 368 U.S. 502, 507-508 & n. 4, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (stating that state courts are competent to enforce federal rights and noting that "[i]ndeed, Congress has so arranged the limited jurisdiction of federal courts that some federal laws can be enforced only in state courts." (citations omitted)); see also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co., 369 U.S. 95, 103-04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (holding that a state court exercising jurisdiction over suit arising from collective bargaining agreement must apply federal common law).

14
By finding that satisfaction of the two-prong Boyle test does not necessarily create federal jurisdiction under 28 U.S.C. § 1331, we again part ways with the Fourth Circuit's holding in Caudill. The Caudill court conflated the preemption and jurisdiction analyses by holding that a significant conflict with uniquely federal interests was sufficient to confer subject matter jurisdiction on the federal court.3 See 999 F.2d at 78-79. We agree with the criticism Caudill has received for giving short shrift to the well-pleaded complaint rule. See Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 314-15 (3d Cir.1994) (rejecting Caudill's reasoning); 15 James Wm. Moore, et al., Moore's Federal Practice § 103.45[3] [c] (3d ed.2004) (commenting that Caudill is "fatally flawed if the validity of the pleaded complaint rule ... [is] accepted").4

C.

15
Empire also argues — and our dissenting colleague agrees — that federal jurisdiction exists pursuant to FEHBA's preemption provision, 5 U.S.C. § 8902(m)(1).5 Before explaining why we disagree, we discuss first a peculiar feature of § 8902(m)(1) which receives very little judicial attention. Though courts generally decide FEHBA cases as if § 8902(m)(1) were a preemption provision like any other, see, e.g., Hayes v. Prudential Ins. Co. of Am., 819 F.2d 921, 926 (9th Cir.1987) (discussing earlier version of § 8902(m)); Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking and Fin., 791 F.2d 1501, 1504-05 (11th Cir.1986) (same), the provision is in fact quite unusual, because it provides that certain types of contract terms will "supersede and preempt" state laws in a particular field. 5 U.S.C. § 8902(m)(1). Normally, preemption clauses provide that federal law will preempt state law. A typical provision might provide for preemption, for example, by expressly stating that the statute's provisions preempt state law, see, e.g., Employee Retirement Income Security Act (ERISA) § 514(a), 29 U.S.C. § 1144(a); 1976 Copyright Act § 301, 17 U.S.C. § 301(a), or by prohibiting state law from interfering with a policy established in federal law, see, e.g., Communications Act § 253, 47 U.S.C. § 253. Regardless of a given provision's structure or wording, however, we generally take for granted that it is law, and not a mere contract term, that carries the preemptive force. See generally Sprint Spectrum L.P. v. Mills, 283 F.3d 404, 414-16 (2d Cir.2002) (summarizing preemption doctrine).

16
Though § 8902(m)(1)'s plain language differs from typical preemption provisions by unambiguously providing for preemption by contract, such a literal reading of the provision is highly problematic, and probably unconstitutional, because only federal law may preempt state and local law. The constitutionality of federal preemption is, after all, grounded in the Supremacy Clause of the Constitution, which provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. (emphasis added); see Sprint Spectrum, 283 F.3d at 414-15 ("The foundation of preemption doctrines is the Supremacy Clause, which invalidates state laws that interfere with, or are contrary to, federal law." (citations, alterations and internal quotation marks omitted)). There is no constitutional basis for making the terms of contracts with private parties similarly "supreme" over state law. See Arthur D. Little, Inc. v. Comm'r of Health and Hosps., 395 Mass. 535, 481 N.E.2d 441, 452 (1985) ("[T]his court has been unable to locate authority in this or any other jurisdiction which supports the proposition that a contract to which the Federal government is a party somehow constitutes Federal law for the purposes of the supremacy clause.").

17
Taken literally, therefore, FEHBA's preemption provision may fail to withstand constitutional scrutiny unless FEHBA-authorized contracts themselves are "Laws of the United States." They are not. "Law" connotes a policy imposed by the government, not a privately-negotiated contract. See Wolens, 513 U.S. at 229 n. 5, 115 S.Ct. 817 (1995) (finding that "the word series `law, rule, regulation, standard, or other provision'" as used in a federal statute "connotes official, government-imposed policies, not the terms of a private contract." (citation and internal quotation marks omitted)); see also id. at 241, 115 S.Ct. 817 (O'Connor, J., concurring in the judgment in part and dissenting in part) ("To be sure, the terms of private contracts are not `laws' ...."). Under FEHBA, the government does not impose contract terms as it would impose a law. Rather, the OPM negotiates the contract terms privately with insurance providers, see generally Doe v. Devine, 703 F.2d 1319, 1321-23 (D.C.Cir.1983), who are under no obligation to enter into the contracts in the first place. Cf. Evanns v. AT & T Corp., 229 F.3d 837, 840 n. 9 (9th Cir.2000) ("`[A] tariff, required by law to be filed, is not a mere contract. It is the law.'" (quoting Carter v. Am. Tel. & Tel. Co., 365 F.2d 486, 496 (5th Cir.1966))); Marcus v. AT & T Corp., 138 F.3d 46, 56 (2d Cir.1998) (distinguishing between laws and "mere contracts") (internal quotation marks and citation omitted). Empire's attempt to portray FEHBA contracts as "law" is unavailing.6

18
The fact that a literal reading of § 8902(m)(1) raises serious constitutional problems does not, however, require us to invalidate the provision. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems," we may "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). This canon of statutory construction, known as "constitutional avoidance," is grounded in "respect for Congress, which we assume legislates in the light of constitutional limitations." United States v. Pettus, 303 F.3d 480, 486 (2d Cir.2002) (citation and internal quotation marks omitted). Here, we can reasonably construe § 8902(m)(1) as requiring that, in cases involving the "terms of any contract under [FEHBA] which relate to the nature, provision, or extent of coverage or benefits," federal law"shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). This construction is as faithful as constitutionally possible to the provision's plain language and respects Congress's stated intent to maintain "uniformity" in FEHBA benefits and to "displace State or local law relating to health insurance or plans." H.R.Rep. No. 105-374, at 9, 16 (1997); see also S.Rep. No. 105-257, at 15 (1997). The federal law preempting state law may be federal common law or the FEHBA statute provisions themselves, but it must be law — not contract terms.

D.

19
Turning to the effect of § 8902(m)(1) on the instant case, we disagree with the argument put forth by Empire and the dissent that the provision somehow authorizes by itself the exercise of federal jurisdiction. In our view, § 8902(m)(1), which makes no reference to a federal right of action or to federal jurisdiction, is simply a limited preemption clause that the instant dispute does not trigger.7 Reading § 8902(m)(1) as conferring federal jurisdiction over contract disputes between private parties strains the language of the provision and undermines the presumption against federal preemption that should guide our analysis in this case. See Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 323 (2d Cir.2003) (noting that there is an "assumption that Congress does not intend to supplant state law" (citation and internal quotation marks omitted)).

20
Two independent conditions must be satisfied in order to trigger preemption under § 8902(m)(1). First, preemption only occurs when the FEHBA contract terms at issue "relate to the nature, provision, or extent of coverage or benefits." 5 U.S.C. § 8902(m)(1). Second, federal law may only preempt state or local laws if those laws "relate[ ] to health insurance or plans."8 Id. Empire completely ignores the existence of this second condition, arguing erroneously that because the contract provisions at issue relate to benefits, they necessarily supersede "all state law." Without any showing that the dispute implicates a specific state law or state common-law principle "relat[ing] to health insurance," § 8902(m)(1) does not authorize federal preemption of state law in this case.9

21
Judge Raggi argues in dissent that the case satisfies the second condition for § 8902(m)(1) preemption on the ground that the phrase "state or local law ... which relates to health insurance or plans" encompasses laws of general application that make absolutely no reference to health insurance or plans but are used in a given case to "construe or enforce" FEHBA plans. Post at 158. In our view, this reading of § 8902(m)(1), renders the second limiting condition meaningless. This is because every state or local law applied to a dispute satisfying the first condition (that is, every state law applied to a dispute involving a contract term relating to coverage or benefits) will ipso facto affect the construction or enforcement of that term. Thus, under the dissent's reasoning, FEHBA contract terms will preempt every state or local law so long as the first requirement is satisfied. This strips the second limiting condition of any force whatsoever.10

22
Judge Raggi contests this characterization of her analysis, explaining that under her interpretation, the second limiting condition might still impose meaningful limits on preemption "where general state or local law affects FEHBA coverage or benefits only tangentially, without attempting to construe or enforce those plan terms." Post at 158. Even in such circumstances, however, the second limiting condition would likely have no meaning that is independent and distinct from the first limiting condition, which requires that the contract terms at issue specifically relate to health coverage in order for preemption to occur. 5 U.S.C. § 8902(m)(1). In other words, under the circumstances described by Judge Raggi, in which FEHBA coverage is only affected "tangentially," it is highly unlikely that either condition for § 8902(m)(1) preemption will be met. Thus, Judge Raggi's argument does not explain how the second limiting condition carries any independent meaning. Perhaps, under Judge Raggi's interpretation, the second condition might have independent meaning in a dispute that (1) centers on contract terms specifically relating to health coverage but (2) does not involve the enforcement or construction of those contract terms. We find it difficult, however, to imagine such a case.11

23
In defense of her position, Judge Raggi observes that many Supreme Court and Second Circuit cases construe the term "relates to" quite broadly. See post at 156-57. The cases she cites, however, are not directly applicable because they did not involve FEHBA. As this Court, our sister circuits and the Supreme Court have all recognized, the precise meaning of the vague term "relates to" depends on the larger statutory context. See, e.g., Gerosa, 329 F.3d at 323 (stating that "ERISA's nearly limitless `relates to' language offers no meaningful guidelines to reviewing judges," and that we must therefore "`go beyond the unhelpful text ... and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive'" (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995))); Roach v. Mail Handlers Benefit Plan, 298 F.3d 847, 850 (9th Cir.2002) ("`[R]elates to' must be read in the context of the presumption that in fields of traditional state regulation the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress. Here, this means that we must presume that Congress did not intend [FEHBA] to preempt the quintessentially state-law standards of reasonable medical care, because § 8902(m)(1) does not indicate a clear and manifest intent to preempt this area of state law." (second and third alterations in original) (citations and internal quotation marks omitted)). The Supreme Court has specifically warned against overly-broad interpretations of the term, noting that "[i]f `relate[s] to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." Travelers Ins. Co., 514 U.S. at 655, 115 S.Ct. 1671 (citation and internal quotation marks omitted). To define "relate[s] to" so broadly "would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." Id.12

24
We should be especially reluctant to rely on ERISA-based precedent to justify an expansive interpretation of FEHBA's preemption provision, given the fundamental differences between ERISA and FEHBA. ERISA is significantly more comprehensive than FEHBA, in that it contains multiple preemption provisions and a detailed civil enforcement scheme intended to completely supplant state law. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court has relied heavily on ERISA's civil enforcement provisions, as well as those provisions' unambiguous legislative history, to support holdings that broadly construe ERISA's preemptive reach. See Davila, 124 S.Ct. at 2500 (stating that the Court's understanding of ERISA's preemptive effect is informed by the "overpowering federal policy" embodied in ERISA's civil enforcement provision, which was intended to create "an exclusive federal remedy"); Pilot Life, 481 U.S. at 55, 107 S.Ct. 1549 (quoting the ERISA Conference Report's statement that all suits to enforce benefits rights "are to be regarded as arising under the laws of the United States") (emphasis omitted); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (noting that ERISA's "deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern" (citation and internal quotation marks omitted)); Pilot Life, 481 U.S. at 46, 107 S.Ct. 1549 (noting ERISA sponsors' emphasis on the "breadth and importance of [ERISA's] preemption provisions"). Given ERISA's comprehensive civil enforcement mechanisms and a legislative history "fully confirm[ing]" that ERISA's remedies were meant to be exclusive, Pilot Life, 481 U.S. at 54, 107 S.Ct. 1549, we reject Empire's and Judge Raggi's suggestion that we should rely on ERISA-related precedent to determine the preemptive reach of FEHBA. See Ingersoll-Rand Co., 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474; Devlin v. Transp. Communications Int'l Union, 173 F.3d 94, 98 (2d Cir.1999).13

25
The non-ERISA cases on which Judge Raggi relies in her dissent similarly fail to justify the excessively broad interpretation of "relate to" that she favors. In Coregis Insurance Co. v. American Health Foundation, Inc., 241 F.3d 123 (2d Cir.2001), for example, the issue was whether certain lawsuits were "related to" a company's financial failure within the meaning of an insurance policy. We noted that the "[l]awsuits are related to the Companies' financial failure by the very wording of the complaints, which explicitly refer to, discuss, and seek redress for that failure." Id. at 131. In the instant case, neither Empire nor Judge Raggi has cited any state law that "explicitly refers to" or "discuss[es]" health insurance or plans. Coregis's rationale therefore does not apply.14

26
To the extent we should rely on case law interpreting preemption provisions appearing in other statutes, we find American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), more relevant and more instructive. Wolens involved the Airline Deregulation Act (ADA), which bars states from "`enact[ing] or enforc[ing] any law relating to [air carrier] rates, routes, or services.'" Id. at 221-22, 115 S.Ct. 817 (quoting 49 U.S.C.App. § 1305(a)(1), now codified as amended at 49 U.S.C. 41713(b)). The plaintiffs in Wolens were airline customers who brought state law claims for consumer fraud and breach of contract after the airline retroactively took away their frequent flyer miles. The Supreme Court held that the consumer fraud claims, which were brought under a state statute, were preempted, but that the breach of contract action was not. The airline had argued that in passing the ADA, Congress provided that questions of the airline's rights and obligations would be matters of federal and not state law. The Court disagreed, stating:

27
[It is not] plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with the ERISA, which does channel civil actions into the federal courts, under a comprehensive scheme detailed in the legislation, designed to promote prompt and fair claims settlement.

28
Id. at 232, 115 S.Ct. 817 (citation and internal quotation marks omitted).15 Adopting this same reasoning, we do not believe that FEHBA reveals a congressional objective to resolve all manner of breach of contract suits relating to the Service Benefit Plan in federal court.16

CONCLUSION

29
If Congress intended for this case to be heard in federal court, it could have created a private right of action for suits against FEHBA beneficiaries; it could have vested jurisdiction over these claims in the federal courts; or it could have included an affirmative grant of authority to the federal courts to create a body of federal common law. Congress did none of these things.

30
The preemption provision does not manifest an intent to supplant all state law with federal common law in cases involving FEHBA-authorized contract provisions. Section 8902(m)(1) plainly establishes that only state laws "relat[ing] to health insurance or plans" are subject to preemption. We decline Empire's suggestion that we read this phrase out of the provision. Moreover, even if federal law is likely to preempt McVeigh's defenses and thereby to affect the outcome of the case, this is insufficient to create federal jurisdiction. The well-pleaded complaint rule requires that the complaint itself arise under federal law in order for there to be federal jurisdiction. See Briarpatch Ltd., 373 F.3d at 304. Empire's claims are breach-of-contract claims arising under state law. There is no indication that state law conflicts meaningfully with or is inadequate to achieve the federal interest in this case. Accordingly, we AFFIRM the district court's ruling that Empire's claims arise under state law.

Notes:

1
The contract is negotiated between OPM and BCBSA. Federal employees like Joseph McVeigh do not enter into a contract for health benefits with BCBSA or any other Blue Cross and Blue Shield entity, but instead enroll in the Plan pursuant to the contract between BCBSA and OPM. While OPM is a party to the FEHBA contract, we emphasize that the dispute in this case is between two private parties: Empire and Denise Finn McVeigh

2
The provision provides in relevant part:
If another person or entity ... causes you to suffer an injury or illness, and if we pay benefits for that injury or illness, you must agree to the following:
• All recoveries you obtain (whether by lawsuit, settlement, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid. Our share of any recovery extends only to the amount of benefits we have paid or will pay to you or, if applicable, to your heirs, administrators, successors, or assignees.

3
InBoyle, the Court did not refer to the well-pleaded complaint rule because jurisdiction was based on the parties' diversity. See 487 U.S. at 502, 108 S.Ct. 2510.

4
Nothing in this analysis contravenes our decision inWoodward, 164 F.3d 123. Woodward did not go so far as to hold that satisfaction of Boyle provides federal question jurisdiction. Instead, it held that where the plaintiff fails to satisfy Boyle there is clearly no basis for federal question jurisdiction. There is nothing in the case that precludes us from clarifying that, even in cases in which Boyle is satisfied, courts must still ask the secondary question of whether the federal common law issue appears on the face of the plaintiff's well-pleaded complaint.

5
Section 8902(m)(1) provides:
The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.
5 U.S.C. § 8902(m)(1).

6
In arguing that the contract terms constitute law, Empire relies onMarcus, in which this Court found that federal tariffs filed by AT & T with the FCC were themselves federal law. See 138 F.3d at 56. Marcus, however, relied on an entire body of law standing for the proposition that "federal tariffs are the law, not mere contracts." Id. (citation and internal quotation marks omitted). There is no comparable case law surrounding FEHBA-authorized contracts. Moreover, AT & T was required by law to file the tariffs that were at issue in Marcus. This makes the tariffs fundamentally different from a FEHBA contract, which the government does not impose but rather negotiates with willing insurance companies.

7
Notably, FEHBA does contain a provision authorizing federal jurisdiction over FEHBA-related civil actions or claims "against the United States." 5 U.S.C. § 8912 (emphasis added). Of course, the grant of federal jurisdiction over one category of claims does not necessarily strip federal courts of their jurisdiction over another category of claims. See Verizon Maryland, Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 643-44, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Nevertheless, § 8912 does demonstrate that Congress considered jurisdictional issues in enacting FEHBA and did not hesitate expressly to confer federal jurisdiction where it found it necessary to do so.
The OPM has also moved to expand federal jurisdiction. As noted by our dissenting colleague, the OPM modified FEHBA regulations in 1995 to provide that legal actions seeking review of final action by the OPM for a denial of health benefits "must be brought against OPM and not against the carrier or carrier's subcontractors." 5 C.F.R. § 890.107. Read together with 5 U.S.C. § 8912, the new regulation ensures that suits brought by beneficiaries for denial of benefits will land in federal court. There is, however, no analogous regulation opening federal courts to insurance carriers seeking reimbursement from beneficiaries.

8
We agree with Empire that the District Court erroneously relied on a version of the preemption provision that is no longer in effectSee Empire HealthChoice Assur., 2003 WL 22171693, at *3. Even applying the proper provision, however, Empire's argument fails.

9
The suit will certainly trigger FEHBA's preemption provision at a later stage if McVeigh defends herself by reference, for example, to a state health insurance law. Such a possibility of preemption, however, is insufficient to establish federal jurisdiction. As discussed in Section B,supra, the well-pleaded complaint rule precludes a party from invoking federal jurisdiction merely because it anticipates a defense that will be preempted by federal law. Briarpatch Ltd., 373 F.3d at 304; see also Davila, 124 S.Ct. at 2494; City of Rome, 362 F.3d at 177. If McVeigh does not defend in reliance upon some state law relating to health insurance, or in reliance on some state common law principle that would clearly run counter to federal policy, then state law could resolve whether McVeigh has breached her obligations. See Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 71, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (finding no authority to fashion federal common law where "there has been no showing that state law is not adequate to achieve" the federal interest).

10
If Congress had not wished to limit the types of state laws subject to preemption, it could have quite easily provided that "federal law shall govern the interpretation and enforcement of contract terms under this chapter which relate to the nature, provision, or extent of coverage or benefits."

11
Judge Raggi's discussion of ERISA-related precedent on this point does not support her argument, because ERISA contains no provision that is analogous to the first limiting condition contained in 5 U.S.C. § 8902(m)(1)See post at 158 (citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 841, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 660-661, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)); 29 U.S.C. § 1144(a). Thus, while the cases cited by Judge Raggi demonstrate that § 8902(m)(1)'s second condition, as she interprets it, might impose meaningful limits on preemption, they do not demonstrate that the second condition imposes any limits not already imposed by the first condition.

12
Judge Raggi explains that "relate to" is "synonymous with the phrases `in connection with,' `associated with,' `with respect to,' and `with reference to.'"Post at 157. The Supreme Court, however, has recognized the limited usefulness of such definitions. In Travelers Insurance Co., a case involving ERISA, the Court wrote:
[We must determine] whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.
514 U.S. at 656, 115 S.Ct. 1671.

13
Furthermore, Judge Raggi may overstate the degree to which FEHBA's preemption provision is similar to ERISA's. In comparing the wording of the two provisions, Judge Raggi omits mention of the first limiting condition of 5 U.S.C. § 8902(m)(1), which requires that the preempting contract term "relate to... [health] coverage or benefits."See post at 158. ERISA's provision contains no analogous requirement. See 29 U.S.C. § 1144(a); see also note 11, supra.

14
Judge Raggi also citesCelotex Corp. v. Edwards, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) and Kamagate v. Ashcroft, 385 F.3d 144 (2d Cir.2004). See post at 157. In interpreting the term "relate to" in Celotex, however, the Supreme Court did not have to contend with the general presumption against federal preemption. On the contrary, the Court analyzed the term with the understanding that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Id. at 308, 115 S.Ct. 1493 (emphasis added) (citations and internal quotation marks omitted). Kamagate also fails to support Judge Raggi's argument because it involved a context in which Congress intended to give the term "relate to" an expansive meaning. See Kamagate, 385 F.3d at 154 ("Congress intended to give inclusive meaning in the immigration laws to the phrase `relating to.'") (quoting In re Beltran, 20 I. & N. Dec. 521, 525-26 (B.I.A.1992)).
The Eighth Circuit precedent discussed by Judge Raggi is also distinguishable, see post at 160, because the case involved state law principles that were established in the context of health insurance and that were found to be inconsistent with FEHBA. See MedCenters Health Care v. Ochs, 26 F.3d 865, 866-67 (8th Cir.1994) (citing Westendorf v. Stasson, 330 N.W.2d 699, 703 (Minn.1983)).

15
Judge Raggi correctly notes that the ADA, unlike ERISA and FEHBA, was aimed at encouraging competition rather than uniformitySee post at 158-59. Nevertheless, in distinguishing the ADA from ERISA, the Wolens court relied heavily on ERISA's civil enforcement scheme. 513 U.S. at 232, 115 S.Ct. 817. If this is the key factor distinguishing the ADA from ERISA, then FEHBA would seem to resemble the former more than the latter.

16
Judge Raggi cites a House Report stating that the purpose of the 1998 FEHBA amendments was, in part, to "strengthen the case for trying FEHB program claims disputes in Federal courts rather than State courts" and to "completely displace State or local law relating to health insurance or plans." H.R.Rep. No. 105-374, at 9, 16 (1997);see post at 156. Notably, the Report refers to displacing state and local law "relating to health insurance or plans," and not to generally applicable state law that may have an effect on benefits or coverage in some cases. Id. at 16. (emphasis added). As for the language that relates to bringing claims in federal court, it is something of a mystery what the authors of the report meant by "strengthen the case." This ambiguous wording seems to imply a recognition that the 1998 amendments did not guarantee federal jurisdiction. Given that (1) section 8902(m)(1) is by its plain and unambiguous terms a preemption provision and not a grant of jurisdiction, and (2) the legislative history provides only limited and equivocal support for a contrary conclusion, we do not find that the committee reports cited by Judge Raggi support her broad reading of § 8902(m)(1). See Padilla v. Rumsfeld, 352 F.3d 695, 718 (2d Cir.2003) ("If the plain language is unambiguous, judicial inquiry ends, except in rare and exceptional circumstances, and legislative history is instructive only upon the most extraordinary showing of contrary intentions.") (citation and internal quotation marks omitted), rev'd on other grounds, ___ U.S. ___, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). The 1998 amendments certainly do expand the preemptive reach of FEHBA, but § 8902(m)(1) remains a preemption clause, not a grant of federal jurisdiction.

31
SACK, Circuit Judge, concurring.

32
I concur. I think, for the reasons elaborated by Judge Sotomayor in the principal opinion, that the Boyle test is applicable here and that Empire has failed to satisfy the second prong of that test because it has not demonstrated that there is a "significant conflict ... between an identifiable federal policy or interest and the operation of state law." Boyle v. United Techs. Corp., 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (citation and internal quotation marks omitted). I also agree with Judge Sotomayor's explanation as to why 5 U.S.C. § 8902(m)(1) does not itself authorize the exercise of federal jurisdiction over the cause of action asserted by Empire.

33
I write separately, though, simply to identify several issues that I think we do not decide.

34
First, Empire has made a substantial showing that the first part of the Boyle test has been met because this case implicates "uniquely federal interests," id. at 504, 108 S.Ct. 2510 (citation and internal quotation marks omitted), in providing uniform healthcare coverage for federal employees and in decreasing the administrative costs associated with such insurance. It may well be that, as in Boyle, "the interests of the United States will be directly affected," id. at 507, 108 S.Ct. 2510, by the outcome of this litigation and of litigation like it. It is Empire's inability to meet the second,"significant conflict," part of the test that leads me to join in Judge Sotomayor's opinion affirming the district court's dismissal for lack of subject matter jurisdiction.

35
Second, a future litigant in a similar action may, unlike Empire here, be able to point to specific ways in which the operation of state contract law, or indeed of other laws of general application, would conflict materially with the federal policies underlying FEHBA in the circumstances presented. In that case, presumably, the second part of the Boyle test would be met and, if that litigant's well-pleaded complaint arises under federal law, a federal court would have subject matter jurisdiction.

36
Third, there is no need for us to decide what course to take if, "at a later stage in the proceedings, a significant conflict might arise between New York state law and the federal interests underlying FEHBA, such that the dispute would satisfy both prongs of Boyle." Opinion of Judge Sotomayor, Part B, ante at 142. This portion of the opinion therefore does not seem to me to set forth a part of our holding on this appeal.

37
Fourth, and similarly, although I find Judge Sotomayor's discussion in Section C of the principal opinion of the proper reading of section 8902(m)(1) to be both interesting and persuasive, it is not necessary to our resolution of this appeal. It seems to me to be possible, notwithstanding that analysis, that the statute is unavoidably unconstitutional because contract terms are not "Laws of the United States," that are "the supreme Law of the Land." Id. at 143 (quoting U.S. Const. Art. VI, cl. 2). On the other hand, even if the statute does attempt to render contract terms "supreme" despite the fact that they are not strictly "law," perhaps the statute nonetheless would bear constitutional scrutiny. Still, in either case we must affirm because, for reasons spelled out largely in parts A and D of the principal opinion, the district court rightly ruled that it does not have subject matter jurisdiction under either Boyle or the statute as written. This discussion in the principal opinion, whatever its merits, therefore seems to me also to be dicta. It is possible that our views would turn out to be otherwise were we to confront a different situation in which this issue actually required our resolution. Should that day come, I do not think that the panel that considers the issue will be bound by our analysis here.

38
RAGGI, Circuit Judge, dissenting.

39
In this contract action, Plaintiff-Appellant Empire HealthChoice Assurance, Inc., sues Denise McVeigh, as administratrix of Joseph McVeigh's estate, for breach of the reimbursement provision of a federal employee health insurance plan that had covered her husband before his death.17 The court today rules that this dispute cannot be heard in federal court for lack of subject matter jurisdiction. See 28 U.S.C. § 1331. Specifically, it rejects Empire's argument that the case arises under federal common law, concluding that Empire fails to satisfy the "significant conflict" prong of the test established in Boyle v. United Technologies, 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (holding that federal courts may create federal common law only where the operation of state law would (1) "significantly conflict" with (2) "uniquely federal interests"). I respectfully disagree. Congress has itself addressed the Boyle factors in its 1998 amendment to the preemption provision of the Federal Employees Health Care Protection Act ("FEHBA"), 5 U.S.C. § 8902(m)(1), thereby eliminating the need for courts to consider the question. Section 8902(m)(1) now states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance of plans." 5 U.S.C. § 8902(m)(1). I conclude, for reasons discussed in this dissent, that this language requires courts to construe or enforce any term in a FEHBA plan that relates to health insurance coverage or benefits by reference to uniform federal common law, not state law.

I. Federal Question Jurisdiction

40
Under 28 U.S.C. § 1331, federal district courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." An action "arises under" federal law for purposes of § 1331 jurisdiction only when a plaintiff's well-pleaded complaint alleges a cause of action raising a federal question. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Such a federal question is presented when the complaint invokes federal law as the basis for relief, see Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) (Holmes, J.) (a "suit arises under the law that creates the cause of action"), or when a "substantial, disputed question of federal law is a necessary element of" a well-pleaded state-law claim, Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); see also Marcus v. AT & T Corp., 138 F.3d 46, 56 (2d Cir.1998).

41
Empire contends that § 1331 jurisdiction is proper in this case because federal common law governs all disputes involving the enforcement of FEHBA contracts. See Illinois v. City of Milwaukee, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (holding that § 1331 jurisdiction extends to causes of action governed by federal common law); Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc., 164 F.3d 123, 126 (2d Cir.1999) (same). Alternatively, Empire argues that even if its claims do arise under state law, they are nevertheless properly heard in federal court because their resolution turns upon an interpretation of the operative Plan, which, Empire submits, is itself federal law. Because I agree with Empire's first argument, I find it unnecessary to address the second.

II. Federal Common Law

42
As the majority observes, neither FEHBA nor its regulations expressly provide a federal cause of action for insurance carriers to vindicate their rights under FEHBA contracts. This does not mean that carriers are without a remedy for FEHBA-based disputes. Congress is understood to legislate against the pre-existing backdrop of the common law. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); United States v. Nucci, 364 F.3d 419, 423 (2d Cir.2004); see also Kolstad v. American Dental Ass'n, 527 U.S. 526, 539, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." (internal quotation marks omitted)). It is an elementary common-law principle that a party to a valid contract is bound by its terms and is subject to suit for their enforcement. See, e.g., Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 607-08, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000); Gerrish Corp. v. Universal Underwriters Ins. Co., 947 F.2d 1023, 1028 (2d Cir.1991). See generally O.W. Holmes, The Common Law 227-40 (1881) (describing the characteristics of contracts). Nothing in FEHBA suggests that FEHBA contracts are to be treated differently. The Act does not, for example, provide a comprehensive remedial scheme that supplants a common-law action, cf. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), nor does it contain an express provision precluding such an action, see United States v. Nucci, 364 F.3d at 423. Thus, it is reasonable to conclude that FEHBA contracts are enforceable through common-law breach of contract actions. See Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, 457 U.S. 15, 20, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982) (concluding that although the Urban Mass Transportation Act did not provide a cause of action to enforce contracts entered into pursuant to the Act, "it is reasonable to conclude that Congress expected [these contracts], like ordinary contracts, to be enforceable by private suit upon a breach").

43
That insurance carriers are able to bring breach of contract actions to vindicate FEHBA rights does not, however, mean that these actions are necessarily federal. The presumption, in fact, is to the contrary. As the Supreme Court declared in Erie R. Co. v. Tompkins, "there is no federal general common law." 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, contract actions are usually creatures of state law, see Caceres Agency, Inc. v. Trans World Airways, Inc., 594 F.2d 932, 934 (2d Cir.1979); see also Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), and, accordingly, absent diversity in citizenship among the parties, are ordinarily not subject to federal jurisdiction, see Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.1975).

44
Since issuing Erie, however, the Supreme Court has made clear that federal common law displaces state law in certain narrow circumstances. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640-41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); see also Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U.S. 92, 110, 58 S.Ct. 803, 82 L.Ed. 1202 (1938) (decided the same day as Erie and declaring that "whether the water of an interstate stream must be apportioned between the two States is a question of `federal common law'"). See generally Henry J. Friendly, In Praise of Erie — And of the New Federal Common Law, 39 N.Y.U. L.Rev. 383, 405 (1964) (remarking on the various "specialized" categories of federal common law). Specifically, courts may fashion federal common law (1) when "Congress has given [them] the power" to do so, Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. at 640-41, 101 S.Ct. 2061; or (2) if Congress has not granted such authorization, when (a) a case involves an area of "uniquely federal interests" and (b) the application of state law would "significantly conflict" with federal policies in this area, Boyle v. United Techs., 487 U.S. at 507-08, 108 S.Ct. 2510; accord Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc., 164 F.3d at 127; see also Atherton v. FDIC, 519 U.S. 213, 218, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997); O'Melveny & Myers v. FDIC, 512 U.S. at 87, 114 S.Ct. 2048.

45
A. Empire's Reliance on Boyle to Invoke Federal Common Law

46
Empire relies on Boyle v. United Technologies to support its claim that this contract dispute arises under federal common law. Specifically, it urges this court to follow the Fourth Circuit's application of Boyle in Caudill v. Blue Cross & Blue Shield of North Carolina, 999 F.2d 74 (4th Cir.1993). Although I do not think that Boyle analysis is necessary to reach this conclusion, I think it useful to begin with a brief discussion of Empire's Caudill-based argument.

47
In Caudill, Blue Cross had removed to federal court a state action filed by a FEHBA plan enrollee challenging Blue Cross's denial of benefits.18 Noting that federal removal jurisdiction is limited to state court actions "of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441, the Fourth Circuit ruled that removal was proper because Caudill's claim, although pleaded under state law, actually arose under federal common law. See Caudill v. Blue Cross & Blue Shield of North Carolina, 999 F.2d at 77. Applying the Boyle standard, the court found that (1) Caudill's claim implicated unique federal interests because, if her suit were successful, it would hinder OPM's ability to enter into future FEHBA contracts and might result in costs being passed through to the federal government, and (2) the use of state law would undermine the federal interest in ensuring that federal employees receive uniform health benefits. See id. at 78-79. The latter interest in uniform treatment of enrollees was evinced, the court explained, by FEHBA's preemption provision, which, at that time, stated that "[t]he provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits ... shall supersede and preempt any State or local law ... which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions." 5 U.S.C. § 8902(m)(1) (1997).

48
As the majority notes, Caudill has been criticized by courts and commentators. That criticism, however, is not leveled at its conclusion that federal common law governs FEHBA claims, but at its failure to adhere to the well-pleaded complaint rule. See Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 314-15 (3d Cir.1994); see also 15 James Wm. Moore et al., Moore's Federal Practice § 103.45[3][c] (3d ed.1997) (commenting that Caudill's holding "is fatally flawed if the validity of the well-pleaded complaint rule ... [is] accepted"). The criticism is not without force. Under the well-pleaded complaint rule, a plaintiff, as master of his claim, may avoid federal jurisdiction by relying exclusively on state law in his complaint. See Caterpillar Inc. v. Williams, 482 U.S. at 392, 107 S.Ct. 2425. It appears that Caudill's complaint pleaded claims under only state law, see Caudill, 999 F.2d at 77, and, thus, on its face, presented no federal claim justifying removal. Although Blue Cross's contention that federal common law governed Caudill's state claims may have provided the insurer with a federal defense to the claims that it could raise in the state action, this was not a ground for the removal of those state claims to federal court. See Caterpillar Inc. v. Williams, 482 U.S. at 393, 107 S.Ct. 2425.

49
Thus it appears that in Caudill, removal would have been proper only if Blue Cross had demonstrated that plaintiff's state claims were "completely preempted" by federal law. City of Rome v. Verizon Communications, Inc., 362 F.3d 168, 176-77 (2d Cir.2004). "[C]omplete preemption" occurs when Congress manifests its intent that federal law displace state law by enacting a "federal statute [that] ... provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action"; in such cases, the claim, although pleaded in terms of state law, actually arises under federal law. Beneficial Nat'l Bank v. Anderson, 539 U.S. at 8, 123 S.Ct. 2058; City of Rome v. Verizon Communications, Inc., 362 F.3d at 177. As the Third Circuit has pointed out, however, FEHBA did not provide a cause of action to vindicate the rights at issue in Caudill's state-law claims. See Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d at 315. Thus, by finding removal proper, the Caudill court implicitly extended the complete preemption doctrine to claims that arise under federal common law but for which Congress has not manifested an intent to provide an exclusive cause of action. See id. at 314-15 (criticizing Caudill for expanding the complete preemption doctrine).

50
In this case, unlike in Caudill, the propriety of applying federal common law does not depend on complete preemption. Empire's complaint does not plead claims in terms of state law; rather, it relies exclusively upon federal law. Thus, this court need not decide whether a state-law claim to enforce the terms of a FEHBA plan may be recharacterized as arising under federal law. It need decide only whether federal common law does in fact govern claims to enforce rights under a FEHBA plan. If it does, then this case arises under federal law and the district court had jurisdiction to hear it.

51
I conclude that federal common law does govern the parties' dispute in this case, but I do not rely on Boyle. Instead, I conclude that in amending § 8902(m)(1) in 1998, Congress itself addressed the Boyle factors, making the analysis undertaken in Caudill unnecessary. The amendment necessarily grants courts the power to develop uniform federal common law to construe and enforce the coverage and benefit terms of FEHBA plans.

52
B. Congressional Authorization in § 8902(m)(1) for Federal Common Law to Construe and Enforce FEHBA Plans

53
In 1998, Congress amended FEHBA's preemption provision by striking the clause alluded to in Caudill, providing for preemption of state laws only "to the extent [they are] inconsistent with" a contractual term, see Federal Employees Health Care Protection Act of 1998, Pub.L. No. 105-266, § 3(c), 112 Stat. 2363, 2366 (1998), and enacting a more expansive provision that reads in full: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).

54
The amendment thus effectively legislates both Boyle factors. First, by providing for FEHBA coverage and benefits terms to "supersede" certain state and local laws, Congress has identified a unique federal interest in ensuring national uniformity in the construction and enforcement of such terms. Second, by amending § 8902(m)(1) to eliminate the need for any judicial finding of conflict between contract terms and certain state and local laws, Congress has implicitly authorized courts to employ federal common law to resolve disputes concerning coverage and benefits, even in the absence of the conflict generally required by Boyle.

55
As the majority observes, a literal reading of § 8902(m)(1) could give rise to constitutional concerns. The Supremacy Clause makes plain that the terms of a federal contract cannot by themselves preempt state law; only federal law can preempt state law. See U.S. Const. Art. VI, cl. 2. Because courts assume that Congress legislates in light of constitutional limitations, see Rust v. Sullivan, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), however, it is reasonable to conclude that the operation of federal law is necessarily implicit in § 8902(m)(1), see generally Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. Const. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (noting that where "an otherwise acceptable construction" of a statute is available that is not "plainly contrary to the intent of Congress," courts may adopt that construction to avoid serious constitutional doubts); accord Jones v. United States, 526 U.S. 227, 239-40, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Mindful of this principle, I read § 8902(m)(1) to mean that any terms in a FEHBA plan that relate to coverage or benefits are to be construed according to uniform federal law, and that law will, in turn, supersede any state or local law that relates to health insurance or health plans.

56
My colleagues in the majority apparently agree that the application of federal law is implicit in § 8902(m)(1)'s preemption of certain state laws. Where we disagree is in our assessment of whether that preemption is limited to laws specifically addressing "health insurance or plans," or whether it also extends to general state and local law, including contract law, when an action is brought to construe and enforce a coverage or benefits term in a FEHBA health insurance plan. I conclude that such actions necessarily arise under federal common law because § 8902(m)(1) precludes any state law, including contract law, from construing or enforcing the coverage or benefit terms of FEHBA plans. When the application of state contract law would have that effect, the law "relates to health insurance or plans."

57
Unlike its predecessor, which limited preemption to state laws that actually conflicted with the terms of a FEHBA contract, the 1998 amendment to § 8902(m)(1) precludes state laws that relate to health insurance or plans from playing any role in construing such coverage or benefits terms. See Botsford v. Blue Cross & Blue Shield of Montana, Inc., 314 F.3d 390, 393-94 (9th Cir.2002); see also Russello v. United States, 464 U.S. 16, 23-24, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (when Congress deletes limiting language, "it may be presumed that the limitation was not intended"). While this amendment, on its face, indicates Congress's intent significantly to expand § 8902(m)(1) preemption, a House Report confirms the breadth of the new provision, explaining that the amendment was intended "to strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they live" and to "strengthen the case for trying FEHB program claims disputes in Federal courts rather than State courts," by "completely displac[ing] State or local law relating to health insurance or plans." H.R.Rep. No. 105-374, at 9, 16 (1997); see also S.Rep. No. 105-257, at 15 (1997) (amendment "removes the language dealing with inconsistencies, thereby giving the federal contract provisions clear authority").

58
Although FEHBA does not define what it means for a state or local law to "relate[ ] to health insurance or plans," the Supreme Court has, in other contexts, recognized that the common meaning of the phrase "relate to" is expansive:" `to stand in some relation; to have bearing or concern, to pertain; refer; to bring into association with or connection with.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed.1979)) (discussing the phrase "relating to" in the context of the Airline Deregulation Act of 1978). Our court has also concluded that the phrase does not imply a causal connection; rather, it is synonymous with the phrases "in connection with," "associated with," "with respect to," and "with reference to." Coregis Ins. Co. v. American Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir.2001) (interpreting insurance contract); accord Kamagate v. Ashcroft, 385 F.3d 144, 154 (2d Cir.2004) (applying broad definition to removal statute); see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (applying same definition in ERISA context); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (stating that proceedings "related to" a bankruptcy include "suits between third parties which have an effect on the bankruptcy estate").

59
In the ERISA context, the Supreme Court has ruled that "[u]nder this `broad common-sense meaning,' a state law may `relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." Ingersoll-Rand Co. v. McClendon, 498 U.S. at 139, 111 S.Ct. 478 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Recognizing the potential all-encompassing breadth of this definition, the Court has increasingly focused on ERISA's objective to establish a uniform system of benefits in determining whether a particular state law "relates to" a plan. In light of this federal interest in uniformity, the Court has concluded that a state law of general application "relates to" an ERISA plan where application of the different states' laws could yield inconsistent benefit outcomes in similar cases. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("[L]aws providing alternative enforcement mechanisms also relate to ERISA plans...."); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. at 139, 111 S.Ct. 478. Following these decisions, our court has concluded that ERISA preempts generally applicable state contract law when that law is relied upon to enforce a benefits plan. See Devlin v. Transp. Communications Int'l Union, 173 F.3d 94, 101 (2d Cir.1999).

60
This precedent supports the conclusion that FEHBA preemption is not limited to state and local laws that expressly regulate health insurance or plans.19 Nor is it limited to specialized state rules applicable only to insurance plans, for example, a rule of decision providing for ambiguities in an insurance policy to be resolved in favor of the insured. See, e.g., City of Burlington v. Indemnity Ins. Co. of N. Am., 332 F.3d 38, 45 (2d Cir.2003); Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 326, 645 N.Y.S.2d 421, 423, 668 N.E.2d 392 (1996). Rather, FEHBA preemption also extends to general laws that can reasonably be understood to "relate to health ... plans" whenever such laws would attempt to construe or enforce the coverage or benefits terms of FEHBA health plans.

61
The majority concludes that ERISA precedent is not helpful in determining the preemptive reach of § 8902(m)(1). Certainly, ERISA is a more comprehensive remedial statute than FEHBA, but that does not warrant a different conclusion with respect to preemption. The statutes' preemption clauses are notably similar. ERISA preemption applies to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [the statute]." 29 U.S.C. § 1144(a) (emphasis added). FEHBA preemption applies to "any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1) (emphasis added). More important, the objectives of the two laws are virtually identical. FEHBA — in particular, its amended preemption provision — is designed "to offer uniform benefits" to tens of thousands of federal employees across the nation. H.R.Rep. No. 105-374, at 9.

62
The majority suggests that construing § 8902(m)(1) to apply to state contract law renders meaningless the statute's limitation of federal preemption to state or local law that "relates to health insurance or plans." I cannot agree. Here again, ERISA precedent is instructive in distinguishing between generally applicable state laws that "relate to" health plans and laws that tangentially implicate such plans without relating to them. For example, in Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 841, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court concluded that ERISA preemption of state laws that "relate to any employee benefit plan" did not extend to a state's garnishment statute, even though the garnishment would operate on ERISA benefits. In that case, state law did not attempt to construe the benefits afforded under an ERISA plan; it merely authorized the garnishment of whatever benefits were payable thereunder. Similarly, in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. at 660-61, 115 S.Ct. 1671, the Court noted that generally applicable state quality control and workplace regulations may tangentially affect what benefits an ERISA plan will be able to afford, but they do not attempt to construe the benefits provided by any particular plan. Application of these decisions to this case suggests that where a state law of general application would be employed to construe the rights enforceable under the coverage or benefits terms of a FEHBA plan, such a law "relates to health insurance or plans" and is properly preempted by federal law. But where general state or local law affects FEHBA coverage or benefits only tangentially, without attempting to construe or enforce those plan terms, preemption may not be warranted. Put another way, § 8902(m)(1) contemplates that the coverage and benefits terms of FEHBA plans will always be construed only by reference to uniform federal common law. That law will then preempt any state or local laws that relate to health insurance or plans, both (1) laws specifically denominated as such and (2) general laws that are fairly deemed to "relate [ ] to health insurance or plans" in those cases where such laws would attempt to construe the coverage or benefits terms of such a plan.

63
American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), is not to the contrary. The question in that case was whether the Airline Deregulation Act's preemption clause, which forbids states from enacting or enforcing "any law ... relating to [air carrier] rates, routes, or services," 49 U.S.C.App. § 1305(a)(1) (1993) (now codified with technical changes at 49 U.S.C. § 41713), preempts a state law contract action to enforce rates, routes, and services set forth in an agreement between private parties. The Supreme Court said the answer was no. Wolens, 513 U.S. at 228-29, 115 S.Ct. 817. It explained that the Deregulation Act preempted only state-imposed, as opposed to privately contracted-for, rates, routes, and services. Moreover, the purpose of the Deregulation Act was to encourage competition in these areas, which anticipated a variety of private contractual arrangements. In this context, the Court observed that it was not "plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services." Id. at 232, 115 S.Ct. 817. In so ruling, the Court specifically distinguished the Deregulation Act from ERISA. See id. (noting that ERISA "does channel civil actions into federal court... under a comprehensive scheme ... to promote prompt and fair claims settlement" (internal citations omitted)). Precisely because ERISA's objective is uniformity rather than competition, it makes sense to conclude that Congress intended contract claims arising under that statute to be reviewed according to a single national legal standard.

64
The same conclusion obtains as to FEHBA. The 1995 amendment to 5 C.F.R. § 890.107 channels the vast majority of benefits claims — those by plan beneficiaries — into federal court. See 5 C.F.R. § 890.107(c). As for any remaining FEHBA actions, Congress's expectation when it amended 5 U.S.C. § 8902(m)(1) in 1998 was to "strengthen the case for trying FEHB program disputes in Federal courts rather than state courts." H.R.Rep. No. 105-374, at 9, 16. Further, as already discussed, FEHBA's preemption provision and its uniformity objective have more in common with ERISA than with the Deregulation Act in signaling Congress's intent to have the coverage and benefits terms of FEHBA health insurance plans construed according to uniform federal common law. FEHBA does not simply bar states from enacting laws with respect to the coverage and benefit terms of federal health plans. It contemplates that the coverage and benefits terms of FEHBA plans will themselves supersede any state laws that relate to health insurance or health plans, something possible under the Supremacy Clause only if the construction and enforcement of those plan terms are the exclusive province of federal common law.

65
I recognize that in Wolens the Supreme Court observed that "contract law is not at its core `diverse, nonuniform, and confusing.'" 513 U.S. at 233 n. 8, 115 S.Ct. 817 (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 529, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion)). Thus, the Court anticipated no serious risk of nonuniform adjudication in the enforcement of a nationwide contract by the various states. The amendment to § 8902(m)(1), however, makes plain that Congress was not limiting FEHBA preemption to state laws that might conflict with the terms of federal-employee health plans. Rather, Congress has made clear that it deems any state laws relating to health insurance or health plans, even those that are consistent with federal law, as an obstacle to the uniform construction and enforcement of FEHBA plans. Cf. Ingersoll-Rand Co. v. McClendon, 498 U.S. at 139, 111 S.Ct. 478 ("Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.").

66
Here, Empire seeks to enforce a FEHBA plan term that expressly conditions the receipt of benefits on an enrollee's duty to reimburse the insurer if he recovers in tort from the third party causing his injuries. Because the operative Plan's reimbursement requirement plainly "relates to" the provision of insurance benefits, I conclude that under the broad preemption provision of § 8902(m)(1), Empire cannot look to state contract law to construe or enforce its rights. See Hayes v. Prudential Ins. Co. of Am., 819 F.2d 921, 926 (9th Cir.1987) (holding that state law contract and tort claims, which expanded obligations under the terms of a FEHBA plan, were preempted under the earlier version of § 8902(m)(1)). In that context, state contract law qualifies as a law that "relates to health insurance or plans," which is necessarily preempted by federal common law construing FEHBA coverage and benefits terms.

67
The 1998 amendment to § 8902(m)(1) was surely not designed to expand federal preemption of state law in order to leave insurance carriers without any means to enforce their rights under FEHBA plans. For reasons already discussed, I assume that Congress intended FEHBA contracts to be enforceable. See Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, 457 U.S. at 20, 102 S.Ct. 2202. Because I conclude that Congress expressly proscribed the use of state contract law to construe rights relating to FEHBA benefits or coverage, it logically follows that Congress was thereby authorizing courts to look to federal common law both to construe those rights uniformly and to resolve insurance carriers' FEHBA claims. See, e.g., Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 90 (2d Cir.1998) (stating that when a statute recognizes rights but fails to provide necessary principles for their enforcement, courts must "fill the interstices of the Act by developing federal common law").

68
This conclusion is consistent with MedCenters Health Care v. Ochs, 26 F.3d 865, 867 (8th Cir.1994). Relying on the pre-1998 preemption provision of FEHBA, the Eighth Circuit rejected a jurisdictional challenge to a FEHBA carrier's contract claim for restitution, holding that federal law governs such claims. Although the decision is brief, I can only assume that its respected author, Judge Richard Arnold, thought it so obvious that Congress had authorized federal common law to resolve FEHBA coverage or benefits disputes that the point merited little discussion. See also Tackitt v. Prudential Ins. Co., 758 F.2d 1572 (11th Cir.1985) (citing FEHBA's former preemption provision for proposition that federal law controls interpretation of FEHBA contracts). Cf. Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d at 309 n. 3, 315 (recognizing that FEHBA claims may be governed by federal common law, but declining to reach the issue).

69
In sum, because (1) Empire's contract action seeks to enforce the benefits terms of a FEHBA plan; (2) § 8902(m)(1) contemplates that such benefits terms will uniformly be construed and enforced according to federal common law; and (3) any state law, including contract law, invoked to construe and enforce such benefits terms qualifies as a law that "relates to health insurance or plans" preempted by federal common law, I conclude that Empire's action is a case arising under federal common law over which the district court could properly exercise jurisdiction.

70
C. The Effect of 5 U.S.C. § 8912 on Federal Jurisdiction in this Case

71
Ms. McVeigh insists that, even if Empire's claims arise under federal common law, the district court cannot exercise § 1331 jurisdiction over them because federal jurisdiction over FEHBA claims is limited to that expressly conferred in 5 U.S.C. § 8912 (vesting federal courts with "original jurisdiction ... of a civil action or claim against the United States founded on" FEHBA). Because the majority concludes that Empire's claims do not arise under federal common law, it does not reach this issue. Because I reach a different conclusion with respect to the application of federal common law, I write briefly to explain why I reject Ms. McVeigh's § 8912 argument.

72
Absent some indication to the contrary, statutes vesting courts with jurisdiction over certain matters do not strip courts of their jurisdiction over others. As the Supreme Court stated in Verizon Maryland, Inc. v. Public Service Commission of Maryland,"[t]he mere fact that some acts are made reviewable [under a statute] should not suffice to support an implication of exclusion as to others." 535 U.S. 635, 643-44, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (internal quotation marks omitted). Section 8912 does not purport to deprive federal courts of § 1331 jurisdiction. It simply authorizes federal jurisdiction over FEHBA claims against the United States. See Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1244-46 (10th Cir.2001) (holding that 38 U.S.C. § 1975, which grants district courts "original jurisdiction of any civil action or claim against the United States founded upon [the Servicemen's Group Life Insurance Act (SGLIA)]," does not preclude § 1331 jurisdiction of SGLIA suits against parties other than the United States). Indeed, without the provision, sovereign immunity would bar such claims. See Adeleke v. United States, 355 F.3d 144, 150 (2d Cir.2004). But nothing in § 8912 evinces Congress's intent to limit § 1331's jurisdictional grant in FEHBA cases involving parties other than the United States.

73
For all these reasons, I conclude that this suit to enforce the terms of a FEHBA plan does arise under federal common law, and I dissent from the majority's conclusion that the case was properly dismissed for lack of subject matter jurisdiction.

Notes:

17
The statement of benefits for the plan applicable to this case contains the following reimbursement provision: "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise), no matter how described or designated, must be used to reimburse [the insurer] for benefits ... paid." 2001 Statement of Benefits, at 86;see also 2000 Statement of Benefits, at 45; 1999 Statement of Benefits, at 12; 1998 Statement of Benefits, at 12; 1997 Statement of Benefits, at 12.

18
It is worth noting that at the time Caudill filed his state court action, OPM regulations provided that "litigation to recover on [a FEHBA benefits] claim should be brought against the carrier, not against OPM." 5 C.F.R. § 890.107 (1994). On March 29, 1995, however, OPM amended the regulation to bring virtually all benefit claims by beneficiaries into federal courts: "A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors." 5 C.F.R. § 890.107(c); 60 Fed.Reg. 16,037, 16,039 (March 19, 1995) (interim rule); 61 Fed.Reg. 15,177 (April 5, 1996) (final rule);see also 5 U.S.C. § 8912 (providing that "[t]he district courts of the United States have original jurisdiction ... of a civil action or claim against the United States founded on [FEHBA]").

19
Where Congress has intended to limit preemption to laws specifically regulating particular conduct, it has so indicatedSee, e.g., 7 U.S.C. § 27f(c) (limiting preemption to state laws that "prohibit[ ] or regulate[ ] gaming or the operation of bucket shops" in certain contexts); 8 U.S.C. § 1188(h)(2) (limiting preemption to state or local laws "regulating admissibility of nonimmigrant workers").