

# SUPREME COURT OF MISSOURI
## en banc

JODIE NEVILS,             )
            )
        **APPELLANT,**       )
            )
vs.                      )       **No. SC93134**
            )
GROUP HEALTH PLAN, INC., and   )
ACS RECOVERY SERVICES, INC.,   )
            )
       **RESPONDENTS.**      )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
**Honorable Thea A. Sherry, Judge**

*Opinion issued May 3, 2016*

In *Nevils v. Group Health Plan, Inc.*, 418 S.W.3d 451, 457 (Mo. banc 2014), this

Court held that 5 U.S.C. section 8902(m)(1) of the Federal Employee Health Benefits Act

(FEHBA) did not preempt Missouri law prohibiting subrogation of personal injury

claims. The United States Supreme Court granted certiorari, vacated this Court's

decision in *Nevils*, and remanded the case for this Court to determine whether a new

regulation promulgated by the Office of Personnel Management (OPM) establishes that

FEHBA preempts Missouri's anti-subrogation law. *Group Health Plan Inc., v. Nevils,*

135 S. Ct. 2886 (2015).

The United States Supreme Court has never held that a regulation promulgated by

an executive branch administrative agency determines the scope

of Congress' exercise of its legislative prerogative to expressly preempt state law. Instead, the Court has held consistently that courts should presume that there is no preemption and that a federal statute preempts state law only if it demonstrates Congress' clear and manifest intent to preempt state law. The text of the FEHBA preemption clause has not changed, and the OPM regulation does not overcome the presumption against preemption and demonstrate Congress' clear and manifest intent to preempt state law. Therefore, this Court holds that the OPM regulation does not establish that FEHBA preempts Missouri law prohibiting the subrogation of personal injury claims.

Background

Jodie Nevils (Appellant) was a federal employee with a health insurance plan governed by FEHBA. FEHBA expressly preempts state law as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. section 8902(m)(1).

Appellant filed suit against Group Health Plan, Inc.,[1] and ACS Recovery Services, Inc., after Coventry and ACS enforced a subrogation lien against the proceeds from Appellant's settlement of a personal injury claim. Appellant alleged that the subrogation lien violated Missouri law prohibiting the subrogation

---

[1] Group Health Plan, Inc., is now Coventry Health Care of Missouri, Inc., and will hereafter be referred to as "Coventry."

of personal injury claims. The trial court entered summary judgment in favor of Coventry and ACS on grounds that FEHBA preempts Missouri anti-subrogation law.

This Court reversed the summary judgment and held that the FEHBA preemption clause did not preempt Missouri anti-subrogation law because the subrogation of a personal injury claim does not clearly "relate to the nature, provision, or extent of coverage or benefits." *Nevils*, 418 S.W.3d at 455. This Court's analysis began with the principle that the "historic police powers of the States" are generally preempted only when the federal statute at issue indicates that preemption is the "clear and manifest purpose of Congress." *Id*. at 454 (quoting *Cipollone v. Liggett Group, Inc*., 505 U.S. 504 (1992)). "[W]hen two plausible readings of a statute are possible, 'we would nevertheless have a duty to accept the reading that dis-favors preemption.'" *Id.* (quoting *Bates v. Dow Agrosciences, L.L.C.*, 544 U.S. 431, 449 (2005)). The FEHBA preemption clause is ambiguous because it is subject to plausible, alternate interpretations. *Id*. at 454 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 697 (2006)). Specifically, the FEHBA preemption clause does not address the subrogation or reimbursement rights of insurance providers, *id*. at 455 (citing *Empire*, 547 U.S. at 683), and "there is no indication that Congress delegated to the OPM the authority to make binding interpretations of the scope of the FEHBA preemption clause," *id*. at 457 n.2. In addition to the presumption against preemption, this Court noted that a "cautious" reading of the FEHBA preemption

3

clause was further warranted because the statute takes the unusual step of providing that the terms of a privately negotiated contract preempt state law. *Id.* at 455. Consequently, this Court held that the plain language of the FEHBA preemption clause does not establish a clear and manifest congressional intent to preempt state anti-subrogation law. *Id.* at 457.

Following this Court's opinion in *Nevils*, the OPM promulgated a formal rule providing that:

> A carrier's rights and responsibilities pertaining to subrogation and reimbursement under any FEHB contract relate to the nature, provision, and extent of coverage or benefits (including payments with respect to benefits) within the meaning of 5 U.S.C. 8902(m)(1). These rights and responsibilities are therefore effective notwithstanding any state or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 C.F.R. § 890.106(h). The United States Supreme Court granted certiorari, vacated this Court's decision in *Nevils*, and remanded the case to this Court to determine whether the foregoing rule establishes that FEHBA preempts Missouri's anti-subrogation law.

Analysis

Coventry argues that the OPM's new rule providing that FEHBA preempts state anti-subrogation law is dispositive and requires this Court to hold that FEBHA preempts Missouri's anti-subrogation law. Coventry asserts that the OPM rule is entitled to deference pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* held that when

4

resolving statutory ambiguities, courts should defer to an executive administrative agency's interpretation of the statute through formally promulgated administrative rules. *Id*. 842-43.[2] "*Chevron* deference" is typically applied "[w]here an agency rule sets forth important rights and duties, where the agency focuses fully and directly on the issue, where the agency uses notice-and-comment procedures to promulgate a rule, [and] where the resulting rule falls within the statutory grant of authority." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 173 (2007).

The OPM rule at issue was promulgated formally pursuant to notice and comment rulemaking. The text of the FEHBA preemption clause, however, remains unchanged. To reverse course from the holding in *Nevils*, this Court would have to hold that the OPM's rule is dispositive as to Congress' intent to preempt state law. While *Chevron* has been applied repeatedly to determine the substantive meaning of a statute, the United States Supreme Court has never held expressly that *Chevron* deference applies to resolve ambiguities in a preemption clause. Absent binding precedent requiring such deference, this Court declines to afford dispositive deference to an executive agency's interpretation of a statutory preemption clause.

---

[2] The statutory term at issue in *Chevron* was a provision of the Federal Clean Air Act establishing permitting requirements for "new or modified major stationary sources." 467 U.S. at 840. Therefore, the Court's holding that the agency rule regarding what constituted a "source" of air pollution was entitled to deference related only to the substantive meaning of the statute rather than its preemption of conflicting state law.

The Supremacy Clause of the United States Constitution provides that state laws and constitutional provisions are preempted when in conflict with federal laws. *See Johnson v. State*, 366 S.W.3d 11, 26-27 (Mo. banc 2012). "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987). "Accordingly, 'the purpose of Congress is the ultimate touchstone of pre-emption analysis.'" *Cipollone,* 505 U.S. 504 at 516 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (Congress' purpose is the "ultimate touchstone" for determining the existence and reach of preemption).

While Congress' intent and purpose are the determinative factors, preemption analysis "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981); *see also Cipollone*, 505 U.S. at 516 (preemption analysis "starts with the assumption that the historic police powers of the States [are] not to be superseded by" federal statute). There are two aspects to the presumption against preemption. *City of Belton v. Smoky Hill Ry. & Historical Soc., Inc.*, 170 S.W.3d 429, 434 (Mo. App. 2005) (quoting *Medtronic, Inc.*, 518 U.S. 470 at 485 (1996)). First, it is presumed that the states' historic police powers are not preempted unless it is the clear intent of Congress to preempt state law. *Id*. Second, a court's analysis of the scope of a statute's preemption is determined by the congressional purpose in enacting the

statute. *Id*. When two plausible readings of a statute are possible, "we would nevertheless have a duty to accept the reading that disfavors pre-emption." *Bates,* 544 U.S. 431 at 449 (2005).

As this Court noted in *Nevils*, the United States Supreme Court has recognized that the FEHBA preemption clause is subject to plausible, alternate interpretations. 418 S.W.3d at 454-455 (citing *Empire Healthchoice Assurance Inc.,* 547 U.S. 677 at 697 (2006)). The Court also noted that the "choice-of-law prescription is unusual in that it renders superior preemptive contract terms in health insurance plans, not provisions enacted by Congress [ ] and that such an unusual order warrants [a] cautious interpretation." *Id.* The fact that the FEHBA preemption clause is susceptible to alternate interpretations implicates the presumption against preemption and counsels that preemption is warranted only if Congress expressed its clear and manifest intent that the purposes of FEHBA require the preemption of state anti-subrogation laws. Coventry's argument that this Court must give dispositive deference to the new OPM rule is a tacit admission that Congress did not express its clear and manifest intent that the purpose of FEHBA requires preemption of state anti-subrogation law.

*Cipollone* illustrates the Supreme Court's application of the presumption against preemption when an express preemption clause is at issue. In *Cipollone*, the issue was whether the Federal Cigarette Labeling and Advertising Act preempted state law claims based on failure to warn, breach of express warranty, fraudulent misrepresentation, and conspiracy. The act contained an express

preemption clause that "governed entirely" the preemptive scope of the Act. 505 U.S. at 517. The preemption clause provided that "[n]o *statement* relating to smoking and health shall be required *in the advertising* of properly labeled cigarettes." *Id.* The Supreme Court applied the presumption against preemption to analyze separately whether each of the asserted state law claims was preempted. The Supreme Court stated that "we must construe these provisions in light of the presumption against the pre-emption of state police power regulations. This presumption reinforces the appropriateness of a narrow reading …." *Id*. at 518. The Supreme Court also emphasized that courts "must fairly but - in light of the strong presumption against pre-emption - narrowly construe the precise language of [the preemption clause] and we must look to each of petitioner's common-law claims to determine whether it is in fact pre-empted." *Id*. at 523.

While *Cipollone* discussed the general presumption against preemption, *Cipollone* did not address the issue of whether an agency rule is entitled to judicial deference when application of the rule may result in preemption. That issue was addressed in *Smiley v. Citibank (S. Dakota), N.A*., 517 U.S. 735 (1996). In *Smiley*, a California resident filed a class action lawsuit alleging that late payment fees charged by a South Dakota bank were "unconscionable" and illegal under California law. *Id.* at 738. The bank argued that the lawsuit was preempted by the definition of "interest" in section 85 of the National Bank Act. *Id*. The agency that administered the act promulgated a rule providing that the term "interest" included late fees. *Id.* The plaintiff asserted that if the term "interest" included

8

late fees, then California law, that allegedly barred such fees, would be preempted.
*Id.* As such, the plaintiff argued the agency rule was not entitled to deference and the presumption against preemption applied. *Id.*

The Supreme Court rejected the plaintiff's argument that the presumption against preemption applied because:

> This argument confuses the question of the substantive (as opposed to pre-emptive) *meaning* of a statute with the question of *whether* a statute is pre-emptive. We may assume (without deciding) that the latter question must always be decided *de novo* by the courts. That is *not* the question at issue here; there is no doubt that § 85 pre-empts state law.

*Id*. at 744. The Supreme Court further emphasized the distinction between the substantive meaning of a statute and the preemptive reach of a statute by noting that "[w]hat is at issue here is simply the meaning of a provision that does not (like the provision in *Cipollone*) deal with pre-emption, and hence does not bring into play the considerations petitioner raises." *Id.*

*Smiley* indicates that *Chevron* deference does not apply to provisions, "like the provision in *Cipollone*," that deal expressly with preemption, while it does apply to "substantive" provisions even if application of the substantive provision will have some preemptive effect. Like the preemption clause in *Cipollone*, the FEHBA preemption clause is an express preemption clause. Following the distinction between "substantive" and "preemptive" statutory provisions noted in *Smiley*, this Court concludes that there is no binding precedent requiring courts to afford dispositive deference to an agency rule defining the scope of an express

9

preemption clause. Accordingly, this Court declines to hold that the OPM rule

conclusively resolves the ambiguity in the FEHBA preemption clause.[3]

Contrary to this conclusion, Coventry argues that the case law establishes

that the OPM rule is entitled to dispositive deference. Coventry argues that *City of*

*Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863 (2013), indicates clearly that the courts

must defer to an agency rule interpreting a preemption clause. The issue in *City*

*of Arlington* was whether "an agency's interpretation of a statutory ambiguity that

concerns the scope its regulatory authority (that is, its jurisdiction) is subject to

deference under" *Chevron*. *Id.* at 1866. The Supreme Court held that the rule was

entitled to deference because:

> *Chevron* is rooted in a background presumption of
> congressional intent: namely, that Congress, when it left
> ambiguity in a statute administered by an agency, understood
> that the ambiguity would be resolved, first and foremost, by the
> agency, and desired the agency (rather than the courts) to
> possess whatever degree of discretion the ambiguity allows.
> *Chevron* thus provides a stable background rule against which
> Congress can legislate: Statutory ambiguities will be resolved,
> within the bounds of reasonable interpretation, not by the
> courts but by the administering agency.

---

[3] In *Wyeth v. Levine*, 555 U.S. 555, 576 (2009), the Supreme Court "recognized that an agency regulation with the force of law can pre-empt conflicting state requirements." The fact that an agency regulation can have preemptive effect does not mean that courts must defer to an agency rule purporting to define the preemptive scope of a statute administered by the agency. To the contrary, "[i]n such cases, the Court has performed its own conflict determination, relying on the substance of state and federal law and not on agency proclamations of pre-emption." *Id.* Although *Wyeth* did not directly address the issue of *Chevron* deference, *Wyeth* is consistent with *Cipollone* and *Smiley* insofar as each case indicates that the courts are not required to afford dispositive deference to an agency rule regarding preemption.

As Coventry asserts, the Supreme Court's holding and rationale in *City of Arlington* is a strong re-affirmation of *Chevron*. However, *City of Arlington* was not a Supremacy Clause case. Instead, as the Supreme Court made a clear, *City of Arlington* was about the reach of the FCC's regulatory authority. Therefore, *City of Arlington* is, at its core, a Commerce Clause case with the attendant presumption that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality ...." *Hodel v. Indiana*, 452 U.S. 314, 323 (1981) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976)). *City of Arlington* does not require this Court to hold that the OPM rule is entitled to *Chevron* deference.

Coventry also asserts that *Cuomo v. Clearing House Association, L.L.C.*, 557 U.S. 519, 531 (2009), holds that Chevron deference applies to express preemption clauses. In *Cuomo*, the issue was whether an agency regulation purporting to pre-empt state law enforcement can be upheld as a "reasonable interpretation of the National Bank Act." *Id.* at 523-524. The Supreme Court noted that *Chevron* deference generally applies to agency regulations. *Id.* at 525. However, as Coventry notes, the Supreme Court did not actually apply *Chevron* deference because the agency's regulation did not comport with the statute. *Id.* at 531. *Cuomo* does not hold that an agency regulation interpreting an express preemption clause is entitled to *Chevron* deference.

Coventry also cites *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090 (10th Cir. 2015). In *Helfrich*, the Tenth Circuit held that the same OPM

11

regulation at issue in this case supports a finding that FEHBA preempts state anti-subrogation law. *Id.* at 1110. *Helfrich* reasoned that the presumption against preemption did not apply because the federalism issues that underlie the presumption have "little purchase" when addressing the FEHBA preemption clause because of the federal interest in establishing a uniform set of health insurance benefits for federal employees. *Id.* at 1105. There is no doubt that there is strong federal interest in regulating the provision of health insurance benefits for federal employees. However, it is also true that Missouri has an interest in the uniform enforcement of its anti-subrogation law for all of its citizens. More importantly, even with the federal interest in providing uniform insurance benefits for federal employees, the presumption against preemption still applies because, as indicated in *Empire*, the FEHBA preemption clause is ambiguous and warrants a "cautious interpretation" due to the fact of its "unusual" provision permitting contract terms to preempt state law. 547 U.S. at 697. Respectfully, this Court is not bound by and declines to follow *Helfrich.*

Finally, Coventry notes that in *Kobold v. Aetna Life Ins. Co.*, (Ariz. Ct. App. March 31, 2016), the Court held that the OPM rule at issue in this case is entitled *Chevron* deference. Respectfully, for the reasons noted above, this Court is not bound by and declines to follow *Kobold*.

Conclusion

The OPM rule does not alter the fact that the FEHBA preemption clause does not express Congress' clear and manifest intent to preempt Missouri's anti-

subrogation law.   The circuit court's judgment in favor of Coventry is reversed,

and the case is remanded.

_____
Richard B. Teitelman, Judge

Fischer, Stith, Draper and Russell, JJ.,
concur; Wilson, J., concurs in result in
separate opinion filed; Breckenridge,
C.J., Fischer, Stith, Draper and Russell,
JJ., concur in opinion of Wilson, J.



# SUPREME COURT OF MISSOURI
## en banc

JODIE NEVILS,                )
                                      )
             Appellant,      )
                                        )
v.                                  )        No. SC93134
                                        )
GROUP HEALTH PLAN, INC., and    )
ACS RECOVERY SERVICES, INC.,    )
                                        )
             Respondents.    )

### OPINION CONCURRING IN RESULT

As stated in my separate opinion in *Nevils v. Group Health Plan, Inc.*, 418 S.W.3d 451, 457 (Mo. banc 2014), even if the majority opinion is incorrect and the repayment terms in GHP's contract do fall within the reach of the preemption provision in 5 U.S.C. § 8902(m)(1), that statute's attempt to give preemptive effect to the provisions of a contract between the federal government and a private party is not a valid application of the Supremacy Clause in article VI of the United States Constitution and, therefore, does not displace Missouri law here. Accordingly, for all of the reasons stated in that separate opinion, I concur in the result reached in the majority opinion in this case.

                                                 _____
                                                 Paul C. Wilson, Judge