# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3731

_____

Teresa Bell,

*Plaintiff - Appellant*,

v.

Blue Cross and Blue Shield of Oklahoma, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company agent of Health Care Service Corporation; Blue Cross and Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company agent of Health Care Service Corporation,

*Defendants - Appellees*,

------------------------------

Association of Federal Health Organizations; United States,

*Amici on Behalf of Appellees*.

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville.

_____

Submitted: September 23, 2015
Filed: May 26, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This appeal concerns a dispute between Teresa Bell and two Blue Cross and Blue Shield insurance carriers that administer Bell's government-sponsored benefit plan ("the Plan"). Bell was injured in a motor vehicle accident in Arkansas, and the Plan paid medical benefits on Bell's behalf. Bell then received a payment from a different carrier that insured the party who was allegedly responsible for Bell's injury.

The Blue Cross carriers contend that under the terms of Bell's benefit plan, she must use any monies obtained from the alleged tortfeasor's insurer to reimburse the Plan for medical benefits paid by Blue Cross. Bell responds that under Arkansas law, she is not required to reimburse the Plan unless she has been wholly compensated for her injuries, and that she was not "made whole" by the payments from Blue Cross and the alleged tortfeasor's insurer. Blue Cross's position is that a provision of the Federal Employees Health Benefits Act, 5 U.S.C. § 8902(m)(1), expressly preempts Bell's state-law defense, and that the Plan governs the question of reimbursement. We conclude that federal law preempts the Arkansas state-law defense, and that Bell must reimburse the Plan. We therefore affirm the decision of the district court.[*]

I.

The Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §§ 8901-14, creates a "comprehensive program of health insurance for federal employees." *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). Under the Act, the Office of Personnel Management, commonly known as OPM, contracts with private carriers to offer federal employees a variety of health-care plans. 5 U.S.C. § 8902(a). One of these plans is the Blue Cross and Blue Shield

---

[*]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

Service Benefit Plan, a government-wide plan that is established between OPM and the Blue Cross and Blue Shield Association.  *See* 5 U.S.C. § 8903(1); *McVeigh*, 547 U.S. at 682.  Blue Cross and Blue Shield companies in their respective localities administer this plan.

Each contract between OPM and a carrier like Blue Cross must include "a detailed statement of benefits offered."  5 U.S.C. § 8902(d).  OPM issues official descriptions of plan terms through a "statement of benefits" or "brochure."  *See id.* §§ 8902(a), (d), 8907.  The Statement of Benefits for the contract at issue here includes a section discussing the rights of the parties when others are responsible for injuries to an employee.  It provides, among other things, that if another person causes an employee to suffer an injury, and the Plan pays benefits for that injury, the employee must agree that the Plan is entitled to be reimbursed for its benefit payments even if the employee is not "made whole" for all of her damages in the recoveries that she receives.

Teresa Bell, an employee of the Department of Veterans Affairs, received health-care benefits through a government-sponsored plan that was administered by Blue Cross and Blue Shield of Oklahoma and Blue Cross and Blue Shield of Texas (collectively, "Blue Cross").  In October 2010, she sustained personal injuries and medical expenses from a motor vehicle accident that occurred in Arkansas.  Bell's benefit plan paid $33,014.01 in medical benefits on her behalf.  Bell also pursued a third party who allegedly caused her injury, and she received an undisclosed payment from Progressive Insurance Company, the alleged tortfeasor's insurer, pursuant to a settlement.

Bell and Blue Cross disputed whether Bell was required to use the funds received from Progressive Insurance to reimburse the Plan.  Bell contends that under Arkansas law, the Plan cannot require reimbursement unless Bell has been wholly compensated for her injuries.  *See Shelter Mut. Ins. Co. v. Kennedy*, 60 S.W.3d 458,

461 (Ark. 2001). She represents that the payments from Blue Cross and Progressive did not wholly compensate her. Bell brought suit against Blue Cross in Arkansas state court, seeking a declaration that she is not required to reimburse the Plan.

Blue Cross removed the action to federal court on the theory that Blue Cross was a "person acting under" a federal officer. *See* 28 U.S.C § 1442(a)(1). The district court, relying on *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012), denied Bell's motion to remand the case to state court.

Blue Cross moved for judgment on the pleadings. According to Blue Cross, the Plan terms described above require Bell to use monies that she obtained from Progressive Insurance to reimburse the Plan for benefit payments made, even if Bell has not been "made whole." Blue Cross asserts that federal law, 5 U.S.C. § 8902(m)(1), provides that the terms of the Plan preempt Arkansas law on the question of the carriers' right to reimbursement, and that Bell must reimburse the Plan.

The district court granted Blue Cross's motion, concluding that § 8902(m)(1) expressly preempts Arkansas law. Bell appeals, and we review the district court's decision *de novo*.

II.

Section 8902(m)(1) provides that "[t]he terms of any contract under this chapter which *relate to* the nature, provision, or extent of coverage or *benefits (including payments with respect to benefits)* shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1) (emphases added). The Supreme Court has observed that § 8902(m)(1) "is a puzzling measure, open to more than one construction." *McVeigh*, 547 U.S. at 697. On one view, the subrogation and reimbursement clauses in the contract between OPM and

-4-

Blue Cross function "as a condition or limitation on 'benefits' received by a federal employee." *Id.* Under that approach, the contractual terms "relate to . . . benefits" within the meaning of § 8902(m)(1), and thus preempt state law. *Id.* An alternative reading, however, posits that § 8902(m)(1) refers to "contract terms relating to the *beneficiary's* entitlement (or lack thereof) to Plan payment for certain health-care services he or she has received, and not to terms relating to the carrier's postpayments right to reimbursement." *Id.* Under that interpretation, the contractual clauses would not conflict with or preempt Arkansas law.

Because the Supreme Court in *McVeigh* deemed both constructions of the statute "plausible," *id.* at 698, the parties invoke rules of construction that favor their desired outcome. Bell cites a presumption against preemption that applies when a federal preemption clause is ambiguous. Blue Cross counters with OPM's rule, promulgated in 2015, stating that § 8902(m)(1) has preemptive effect. The carriers argue that the court should defer to the agency's reasonable construction of an ambiguous statute under the doctrine of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Bell cites the Supreme Court's guidance that "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005)). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Id.* at 77. The vitality of this presumption against preemption, however, has been a subject of debate within the Supreme Court. A dissenting opinion in *Altria Group* suggested that application of the presumption has been sporadic, *id.* at 99 (Thomas, J., dissenting), and the most recent decision in this area was splintered. *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2189 (2014) (plurality opinion) (applying presumption); *id.* at 2189 (Scalia, J., concurring in part

-5-

and concurring in the judgment) (rejecting presumption and applying ordinary principles of statutory construction).

Whatever the force of the presumption against preemption as an interpretive tool, the Court has recognized that the presumption should not apply where "considerable federal interests" are at stake. *United States v. Locke*, 529 U.S. 89, 94, 108 (2000). In *Locke*, a case involving regulations that affected maritime commerce, the Court opined that despite "the historic role of the States to regulate local ports and waters under appropriate circumstances," the "'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *Id.* at 108-09. Similarly, in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), the Court rejected a presumption against preemption of state-law fraud-on-the-FDA claims, because "the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Id.* at 347.

This case involves federal interests comparable to those involved in *Buckman* and *Locke*. Although health care in general is an area of traditional state regulation, *e.g.*, *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 387 (2002), this dispute concerns benefits from a federal health insurance plan for federal employees that arise from a federal law. There is obviously a long history of federal involvement in federal employment and benefits. "[D]istinctly federal interests are involved." *McVeigh*, 547 U.S. at 696. The scope of a federal employee's reimbursement obligations has a significant impact on the federal treasury and on premiums or benefits for other employees. *See* 5 U.S.C. § 8909(b); 5 C.F.R. § 890.503(c)(2). The employee's benefit plan "could be described as 'federal in nature' because it is negotiated by a federal agency and concerns federal employees." *McVeigh*, 547 U.S. at 696. "The United States no doubt has an overwhelming interest in attracting able workers to the federal workforce and in the health and welfare of the federal workers

upon whom it relies to carry out its functions." *Id.* at 701 (internal quotation marks omitted). Under these circumstances, we see no warrant to place a thumb on the scales against preemptive effect of the federal statute. Ordinary principles of statutory construction should guide the decision. *Accord Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1104-06 (10th Cir. 2015).

Blue Cross argues that if the preemption statute is ambiguous, we should accord *Chevron* deference to the recent interpretation of OPM that subrogation and reimbursement clauses "relate to" the provision of benefits within the meaning of § 8902(m)(1), and that such clauses are "effective notwithstanding any state or local law." 5 C.F.R. § 890.106(h). OPM concluded that its interpretation of the statute "comports with longstanding Federal policy, lowers the cost of benefits, and creates greater uniformity in benefits and benefits administration." Federal Employees Health Benefits Program; Subrogation and Reimbursement Recovery, 80 Fed. Reg. 931, 932 (Jan. 7, 2015). The agency believed that subrogation and reimbursement clauses "relate to the nature, provision, and extent of coverage or benefits (and the payment of benefits) by making those payments conditional upon a right to subrogation or reimbursement of equivalent amounts, either from a third-party, or from the enrollee, in the event a third party is obligated to pay for the same injury or illness." *Id.* OPM said that its interpretation "furthers Congress's goals of reducing health care costs and enabling uniform, nationwide application of [Federal Employee Health Benefits] contracts." *Id.* (citing H.R. Rep. No. 105-374, at 9 (1997); H.R. Rep. No. 86-957, (1959)).

The law concerning application of *Chevron* to an agency's view on preemption is unsettled. The Supreme Court once assumed without deciding that *Chevron* is *not* applicable to the question whether a federal statute is pre-emptive, *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 744 (1996), then said its interpretation of a preemption statute was "substantially informed" by agency regulations, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996), then later invoked *Chevron* in a preemption

case but ruled that an agency's interpretation was impermissible, so deference was not actually accorded. *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 535-36 (2009). The Court in *City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2013) (Scalia, J.), deferred to an agency's interpretation concerning the scope of its own jurisdiction, but *City of Arlington* did not address a preemption question, and the opinion's author previously joined an opinion concluding that "when an agency purports to decide the scope of federal pre-emption, a healthy respect for state sovereignty calls for something less than *Chevron* deference." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 22, 41 (2007) (Stevens, J., dissenting). Justice O'Connor wrote in 1996 that "[i]t is not certain that an agency regulation determining the pre-emptive effect of any federal statute is entitled to deference," *Lohr*, 518 U.S. at 512 (O'Connor, J., concurring in part and dissenting in part) (emphasis omitted), and it is not clear that the law has evolved materially since then.

One state court has deemed *Chevron* applicable to OPM's interpretation of § 8902(m)(1), *Kobold v. Aetna Life Ins. Co.*, No. 1 CA-CV 12-0315, 2016 WL 1273024, at *1 (Ariz. Ct. App. Mar. 31, 2016), and another concluded that *Chevron* does not apply. *Nevils v. Group Health Plan, Inc.* (*Nevils II*), No. SC93134, slip op. 9-12 (Mo. May 3, 2016). Like the Tenth Circuit in *Helfrich*, 804 F.3d at 1109, we think it is unnecessary to decide. Even without deference to the agency under *Chevron*, the better reading of the statute is that Arkansas law is preempted.

This court already ruled in 1994 that § 8902(m)(1) preempts state law that is inconsistent with a contract under the Federal Employees Health Benefits Act. In *MedCenters Health Care v. Ochs*, 26 F.3d 865, 867 (8th Cir. 1994), the court affirmed a district court's ruling that a subrogation and reimbursement clause in a contract under the Act preempted and superseded Minnesota common law that established a "full recovery rule" as a predicate to reimbursement. *See MedCenters Health Care, Inc. v. Ochs*, 854 F. Supp. 589, 592-93 (D. Minn. 1993). Although *Ochs* was abrogated in part by the Supreme Court's decision in *McVeigh*, because this

-8-

court also thought § 8902(m)(1) conferred federal jurisdiction, *see* 26 F.3d at 867; 854 F. Supp. at 593 n.3, the analysis of *Ochs* concerning ordinary preemption was unaffected by *McVeigh*. Indeed, the Second Circuit opinion that was affirmed on the jurisdictional question in *McVeigh* likewise implied that § 8902(m)(1) would preempt a state-law defense to a subrogation claim. *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 145 n.9 (2d Cir. 2005) (Sotomayor, J.), *aff'd*, 547 U.S. 677 (2006).

The better reading of the statute's text supports the conclusion in *Ochs*. The Act gives preemptive effect to contractual terms that "relate to . . . benefits (including payments with respect to benefits)." The reimbursement and subrogation provisions are limitations on the payment of benefits. Each contract must "contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as the Office considers necessary or desirable." 5 U.S.C. § 8902(d). Blue Cross's statement of benefits informs the insured that "[i]f another person . . . causes you to suffer an injury or illness, and if we pay benefits for that injury or illness, you must agree to the provisions listed below." Those provisions advise the insured of Blue Cross's "right of recovery to be reimbursed for our benefit payments even if you are not 'made whole,'" and its right "to initiate recovery on your behalf (including the right to bring suit in your name)." Blue Cross also informs the insured that it "may delay processing of your claims until" it receives "the signed reimbursement agreement and/or assignment." Because these provisions restrict the payment of benefits, they relate to "benefits (including payments with respect to benefits)."

The reimbursement provision also requires an insured to make repayment of prior benefit payments if the insured recovers from a third party. Blue Cross "may seek a first priority lien on the proceeds of your claim in order to reimburse ourselves to the full amount of benefits we have paid or will pay." That provision relates to "payments with respect to benefits" because, after an insured recovers from a third

party, the contract results in repayment of funds that were previously received as benefits. The contractual provisions also allow Blue Cross to enforce its "right of recovery by offsetting future benefits." An offset of future benefits affects the payment of future benefits and therefore relates to payments with respect to benefits.

The structure of the Act likewise favors giving preemptive effect to the contractual terms concerning reimbursement and subrogation. The Treasury credits all reimbursement and subrogation to the Federal Employees Health Benefits Fund under the Act. *McVeigh*, 547 U.S. at 685. As Justice Breyer observed, "[a]fter benefits are paid, any surplus in the fund can be used at the agency's discretion to reduce premiums, to increase plan benefits, or to make a refund to the Government and enrollees." *Id.* at 703 (Breyer, J., dissenting); *see* 5 U.S.C. § 8909(b); 5 C.F.R. § 890.503(c)(2). Hence, the contractual provisions relate to benefits, including payments with respect to benefits, because they may trigger an increase in plan benefits through the workings of the statutory scheme.

Bell relies on *Nevils v. Group Health Plan, Inc.* (*Nevils I*), 418 S.W.3d 451 (Mo. 2014), *vacated sub nom.*, *Coventry Health Care of Missouri, Inc. v. Nevils*, 135 S. Ct. 2886 (2015), and *Kobold v. Aetna Life Insurance Co.*, 309 P.3d 924 (Ariz. Ct. App. 2013), *vacated*, 135 S. Ct. 2886 (2015), in asserting that § 8901(m)(1) requires a more "immediate relationship" between the payment of benefits and the contractual provision in question. *Nevils I*, 418 S.W.3d at 457; *Kobold*, 309 P.3d at 928. But the Arizona court has reversed course, *see Kobold*, 2016 WL 1273024, at *1, and the Missouri court's conclusion, to which it recently adhered, was influenced by a presumption against preemption with which we respectfully disagree. *See Nevils I*, 418 S.W.3d at 456. The text of § 8902(m)(1) includes no "immediacy" requirement, and the phrase "relate to" benefits is properly given a broad meaning in ordinary usage. *See Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992). Nothing about the context here, involving a statute that serves to promote uniformity in the

administration of federal employee benefits and stewardship of the public fisc, suggests a narrower meaning.

Bell asserts that § 8901(m)(1) violates the Supremacy Clause of the Constitution because it provides that contractual terms, rather than federal law, will supersede and preempt state laws. Bell did not raise this constitutional argument in response to the motion for judgment on the pleadings in the district court, and the point is therefore forfeited. *See Helfrich*, 804 F.3d at 1110. There is no obvious error that warrants correction on appeal. Others have been skeptical that § 8901(m)(1) presents a constitutional problem, *see id.* (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512-13 (1988)), but in any event, the statute can reasonably be construed to mean that federal law (either the Act itself or federal common law), not the contractual terms, has the preemptive force. *See McVeigh*, 396 F.3d at 144-45 (Sotomayor, J.); *id.* at 155-56 (Raggi, J., dissenting). Several Justices of the Missouri court have concluded that there is no basis to construe § 8901(m)(1) in a manner that is constitutional, because Congress plainly did not intend the creation of federal common law, and the Supreme Court in *McVeigh* rejected it. *See Nevils II*, slip op. at 14 (Wilson, J., concurring in the result); *Nevils I*, 418 S.W.3d at 464-65 (Wilson, J., concurring). Then-Judge Sotomayor, however, relied on "Congress's stated intent to maintain 'uniformity' in FEHBA benefits and to 'displace State or local law relating to health insurance or plans.'" 396 F.3d at 145 (quoting H.R. Rep. No. 105-374, at 9, 16 (1997)). We are not convinced that a saving construction would be antithetical to any congressional goal that must be discerned from the statute's text. As we understand *McVeigh*, the Supreme Court held only that federal common law did not displace *the entire area* of state law involving "FEHBA-authorized contracts at large." 547 U.S. at 691-93. The Court left open the possibility that state law could be displaced more narrowly, when there is a "significant conflict . . . between an identifiable federal policy or interest and the operation of state law," *id.* at 693 (quoting 396 F.3d at 150 (Sack, J., concurring)), and the Court's reasoning does not

preclude construing § 8901(m)(1) to mean that federal common law or the Act displaces state law in the case of such a conflict.

\*   \*   \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____