(Slip Opinion) OCTOBER TERM, 2016 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COVENTRY HEALTH CARE OF MISSOURI, INC., FKA GROUP HEALTH PLAN, INC. *v.* NEVILS

CERTIORARI TO THE SUPREME COURT OF MISSOURI

No. 16–149.  Argued March 1, 2017—Decided April 18, 2017

The Federal Employees Health Benefits Act of 1959 (FEHBA) authorizes the Office of Personnel Management (OPM) to contract with private carriers for federal employees' health insurance.  5 U. S. C. §8902(a), (d).  FEHBA contains an express-preemption provision, §8902(m)(1), which states that the "terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans."

OPM's contracts have long required private carriers to seek subrogation and reimbursement.  Accordingly, OPM's regulations make a carrier's "right to pursue and receive subrogation and reimbursement recoveries . . . a condition of and a limitation on the nature of benefits or benefit payments and on the provision of benefits under the plan's coverage."  5 CFR §890.106(b)(1).  In 2015, OPM published a new rule confirming that a carrier's subrogation and reimbursement rights and responsibilities "relate to the nature, provision, and extent of coverage or benefits (including payments with respect to benefits) within the meaning of" §8902(m)(1), and "are . . . effective notwithstanding any state or local law, or any regulation issued thereunder, which relates to health insurance or plans."  §890.106(h).

Respondent Jodie Nevils was insured under a FEHBA plan offered by petitioner Coventry Health Care of Missouri.  When Nevils was injured in an automobile accident, Coventry paid his medical expenses. Coventry subsequently asserted a lien against part of the settlement Nevils recovered from the driver who caused his injuries.  Nevils satisfied the lien, then filed a class action in Missouri state court, alleging that, under Missouri law, which does not permit subrogation or

reimbursement in this context, Coventry had unlawfully obtained re-imbursement. Coventry countered that §8902(m)(1) preempted the state law. The trial court granted summary judgment in Coventry's favor, and the Missouri Court of Appeals affirmed. The Missouri Supreme Court reversed. Finding §8902(m)(1) susceptible to diverse plausible readings, the court invoked a "presumption against preemption" to conclude that the federal statute's preemptive scope excluded subrogation and reimbursement. On remand from this Court for further consideration in light of OPM's 2015 rule, the Missouri Supreme Court adhered to its earlier decision. A majority of the Missouri Supreme Court also held that §8902(m)(1) violates the Supremacy Clause.

*Held*:

 1. Because contractual subrogation and reimbursement prescriptions plainly "relate to . . . payments with respect to benefits," §8902(m)(1), they override state laws barring subrogation and reimbursement. Pp. 6–9.

 (a) This reading best comports with §8902(m)(1)'s text, context, and purpose. Contractual provisions for subrogation and reimbursement "relate to . . . payments with respect to benefits" because subrogation and reimbursement rights yield just such payments. When a carrier exercises its right to either reimbursement or subrogation, it receives from either the beneficiary or a third party "payment" respecting the benefits the carrier had previously paid. The carrier's very provision of benefits triggers the right to payment. Congress' use of the expansive phrase "relate to," which "express[es] a broad pre-emptive purpose," *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 383, weighs against Nevils' effort to narrow the term "payments" to exclude payments that occur "long after" a carrier's provision of benefits. Nevils' argument that Congress intended to preempt only state coverage requirements, *e.g.*, inclusion of acupuncture and chiropractic services, also miscarries.

 The statutory context and purpose reinforce this conclusion. FEHBA concerns "benefits from a federal health insurance plan for federal employees that arise from a federal law." *Bell* v. *Blue Cross & Blue Shield of Okla.,* 823 F. 3d 1198, 1202. Strong and "distinctly federal interests are involved," *Empire HealthChoice Assurance, Inc.* v. *McVeigh*, 547 U. S. 677, 696, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments. The Federal Government also has a significant financial stake in subrogation and reimbursement. Pp. 6–8.

 (b) *McVeigh*'s suggestion that §8902(m)(1) has two "plausible" interpretations, 547 U. S., at 698, Nevils asserts, supports application of the presumption against preemption here. But the Court nev-

Syllabus

er chose between the two readings set out in *McVeigh*, because doing so was not pertinent to the discrete question whether federal courts have subject-matter jurisdiction over FEHBA reimbursement actions. Having decided in *McVeigh* that §8902(m)(1) is a "choice-of-law pre-scription," not a "jurisdiction-conferring provision," *id.,* at 697, the Court had no cause to consider §8902(m)(1)'s text, context, and pur-pose, as it does here. Pp. 8–9.

2. The regime Congress enacted is compatible with the Supremacy Clause. The statute itself, not a contract, strips state law of its force. FEHBA contract terms have preemptive force only if they fall within §8902(m)(1)'s preemptive scope. Many other federal statutes found to preempt state law, including the Employee Retirement Income Secu-rity Act of 1974 and the Federal Arbitration Act, leave the context-specific scope of preemption to contractual terms. While §8902(m)(1)'s phrasing may differ from those other statutes', FEHBA's express-preemption provision manifests the same intent to preempt state law. Pp. 9–11.

492 S. W. 3d 918, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which all other Members joined, except GORSUCH, J., who took no part in the considera-tion or decision of the case. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 16–149

———————

## COVENTRY HEALTH CARE OF MISSOURI, INC., FKA GROUP HEALTH PLAN, INC., PETITIONER *v.* JODIE NEVILS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MISSOURI

[April 18, 2017]

JUSTICE GINSBURG delivered the opinion of the Court.

In the Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U. S. C. §8901 *et seq.*, Congress authorized the Office of Personnel Management (OPM) to contract with private carriers for federal employees' health insurance. §8902(a), (d). FEHBA contains a provision expressly preempting state law. §8902(m)(1). That provision reads:

> "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

Contracts OPM negotiates with private carriers provide for reimbursement and subrogation. Reimbursement requires an insured employee who receives payment from another source (*e.g.*, the proceeds yielded by a tort claim) to return healthcare costs earlier paid out by the carrier. Subrogation involves transfer of the right to a third-party payment from the insured employee to the carrier, who

can then pursue the claim against the third party. Several States, however, Missouri among them, bar enforcement of contractual subrogation and reimbursement provisions.

The questions here presented: Does FEHBA's express-preemption prescription, §8902(m)(1), override state law prohibiting subrogation and reimbursement; and if §8902(m)(1) has that effect, is the statutory prescription consistent with the Supremacy Clause, U. S. Const., Art. VI, cl. 2? We hold, contrary to the decision of the Missouri Supreme Court, that contractual subrogation and reimbursement prescriptions plainly "relate to . . . payments with respect to benefits," §8902(m)(1); therefore, by statutory instruction, they override state law barring subrogation and reimbursement. We further hold, again contrary to the Missouri Supreme Court, that the regime Congress enacted is compatible with the Supremacy Clause. Section 8902(m)(1) itself, not the contracts OPM negotiates, triggers the federal preemption. As Congress directed, where FEHBA contract terms "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)," §8902(m)(1) ensures that those terms will be uniformly enforceable nationwide, free from state interference.

## I
## A

FEHBA "establishes a comprehensive program of health insurance for federal employees." *Empire HealthChoice Assurance, Inc.* v. *McVeigh*, 547 U. S. 677, 682 (2006). As just noted, *supra*, at 1, FEHBA contains an express-preemption provision, §8902(m)(1). FEHBA assigns to OPM broad administrative and rulemaking authority over the program. See §§8901–8913. OPM contracts with private insurance carriers to offer a range of healthcare plans. §§8902, 8903.

OPM's contracts with private carriers have long included

provisions requiring those carriers to seek subrogation and reimbursement. Accordingly, OPM has issued detailed regulations governing subrogation and reimbursement clauses in FEHBA contracts. See 5 CFR §890.106 (2016). Under those regulations, a carrier's "right to pursue and receive subrogation and reimbursement recoveries constitutes a condition of and a limitation on the nature of benefits or benefit payments and on the provision of benefits under the plan's coverage." §890.106(b)(1).

In 2015, after notice and comment, OPM published a rule confirming that "[a] carrier's rights and responsibilities pertaining to subrogation and reimbursement under any [FEHBA] contract relate to the nature, provision, and extent of coverage or benefits (including payments with respect to benefits) within the meaning of" §8902(m)(1). §890.106(h). Such "rights and responsibilities," OPM's rule provides, "are . . . effective notwithstanding any state or local law, or any regulation issued thereunder, which relates to health insurance or plans." *Ibid.* Its rule, OPM explained, "comports with longstanding Federal policy and furthers Congres[s'] goals of reducing health care costs and enabling uniform, nationwide application of [FEHBA] contracts." 80 Fed. Reg. 29203 (2015) (final rule).

B

Respondent Jodie Nevils is a former federal employee who enrolled in and was insured under a FEHBA plan offered by petitioner Coventry Health Care of Missouri.[1] *Nevils* v. *Group Health Plan, Inc.*, 418 S. W. 3d 451, 453 (Mo. 2014) (*Nevils I*). When Nevils was injured in an automobile accident, Coventry paid his medical expenses. *Ibid.* Nevils sued the driver who caused his injuries and recovered a settlement award. *Ibid.* Based on its contract

————————

[1] Coventry was formerly known as Group Health Plan, Inc. Pet. for Cert. ii. We refer to both the current and former entities as "Coventry."

with OPM, see App. to Pet. for Cert. 129a–130a, Coventry asserted a lien for $6,592.24 against part of the settlement proceeds to cover medical bills it had paid. *Nevils I*, 418 S. W. 3d, at 453. Nevils repaid that amount, thereby satisfying the lien. *Ibid.*

Nevils then filed this class action against Coventry in Missouri state court, alleging that Coventry had unlawfully obtained reimbursement. *Ibid.* Nevils premised his claim on Missouri law, which does not permit subrogation or reimbursement in this context, see, *e.g.*, *Benton House, LLC* v. *Cook & Younts Ins., Inc.*, 249 S. W. 3d 878, 881–882 (Mo. App. 2008). Coventry countered that §8902(m)(1) makes subrogation and reimbursement clauses in FEHBA contracts enforceable notwithstanding state law. The trial court granted summary judgment in Coventry's favor, *Nevils* v. *Group Health Plan, Inc.*, No. 11SL–CC00535 (Cir. Ct., St. Louis Cty., Mo., May 21, 2012), App. to Pet. for Cert. 28a, 32a, and the Missouri Court of Appeals affirmed, *Nevils* v. *Group Health Plan, Inc.*, 2012 WL 6689542, *5 (Dec. 26, 2012).

The Missouri Supreme Court reversed. *Nevils I*, 418 S. W. 3d, at 457. That court began with "the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." *Id.*, at 454 (quoting *Cipollone* v. *Liggett Group, Inc.*, 505 U. S. 504, 516 (1992)) (alterations in original). Finding §8902(m)(1) susceptible to diverse "plausible readings," the court invoked a "presumption against preemption" to conclude that the federal statute's preemptive scope excluded subrogation and reimbursement. 418 S. W. 3d, at 455.

Judge Wilson, joined by Judge Breckenridge, concurred in the judgment. *Id.*, at 457. Observing that "it defies logic to insist that benefit repayment terms do not relate to the nature or extent of Nevils' benefits," *id.*, at 460 (emphasis deleted), Judge Wilson concluded that "Con-

gress plainly intended for §8902(m)(1) to apply to the
benefit repayment terms in [Coventry's] contract," *id.*, at
462. He nevertheless concurred, reasoning that the Su-
premacy Clause did not authorize preemption based on
the terms of FEHBA contracts. *Id.*, at 462–465.

Coventry sought our review, and we invited the Solicitor
General to file a brief expressing the views of the United
States. *Coventry Health Care of Mo., Inc.* v. *Nevils*, 574
U. S. ___ (2014). While Coventry's petition was pending,
OPM finalized its rule governing subrogation and reim-
bursement. See *supra*, at 3. This Court granted certiorari,
vacated the Missouri Supreme Court's judgment, and
remanded for further consideration in light of OPM's
recently adopted rule. *Coventry Health Care of Mo., Inc.* v.
*Nevils*, 576 U. S. ___ (2015).

On remand, the Missouri Supreme Court adhered to its
earlier decision. *Nevils* v. *Group Health Plan, Inc.*, 492
S. W. 3d 918, 920, 925 (2016). OPM's rule, the court main-
tained, "does not overcome the presumption against
preemption and demonstrate Congress' clear and manifest
intent to preempt state law." *Id.*, at 920.

Judge Wilson again concurred, this time joined by a
majority of the judges of the Missouri Supreme Court. *Id.*,
at 925.[2] In their view, Congress' "attempt to give preemp-
tive effect to the provisions of a contract between the
federal government and a private party is not a valid
application of the Supremacy Clause" and, "therefore, does
not displace Missouri law here." *Ibid.*

We granted certiorari to resolve conflicting interpreta-
tions of §8902(m)(1). 580 U. S. ___ (2016). Compare 492
S. W. 2d, at 925 (majority opinion), with *Bell* v. *Blue Cross
& Blue Shield of Okla.*, 823 F. 3d 1198, 1199 (CA8 2016)

———————

[2] Under Missouri law, a "concurring opinion" in which "a majority of
the court concur[s]" is binding precedent. *Mueller* v. *Burchfield*, 359
Mo. 876, 880, 224 S. W. 2d 87, 89 (1949).

(§8902(m)(1) preempts state antisubrogation law); *Helfrich* v. *Blue Cross & Blue Shield Assn.*, 804 F. 3d 1090, 1092 (CA10 2015) (same).

## II

Section 8902(m)(1) places two preconditions on federal preemption. See *supra*, at 1. The parties agree that Missouri's law prohibiting subrogation and reimbursement meets one of the two limitations, *i.e.*, the State's law "relates to health insurance or plans." §8902(m)(1). They dispute only whether the subrogation and reimbursement requirements in OPM's contract with Coventry "relate to the nature, provision, or extent of coverage or benefits," "including payments with respect to benefits." *Ibid.*

Coventry contends that §8902(m)(1) unambiguously covers the contractual terms at issue here. In any event, Coventry, joined by the United States as *amicus curiae*, urges that the rule published by OPM in 2015 leaves no room for doubt that insurance-contract terms providing for subrogation and reimbursement fall within §8902(m)(1)'s preemptive scope. See *supra*, at 3. Deference is due to OPM's reading, Coventry and the United States assert, under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). In Nevils' view, by contrast, §8902(m)(1) does not preempt state antisubrogation and antireimbursement laws in light of the presumption against preemption. Given that presumption, Nevils maintains, OPM's rule is not entitled to deference. Though we have called Nevils' construction "plausible," *McVeigh*, 547 U. S., at 698, the reading advanced by Coventry and the United States best comports with §8902(m)(1)'s text, context, and purpose.

## A

Contractual provisions for subrogation and reimbursement "relate to . . . payments with respect to benefits"

because subrogation and reimbursement rights yield just such payments. When a carrier exercises its right to either reimbursement or subrogation, it receives from either the beneficiary or a third party "payment" respecting the benefits the carrier had previously paid. The carrier's very provision of benefits triggers the right to payment. See Tr. of Oral Arg. 31; *Helfrich*, 804 F. 3d, at 1106; *Bell*, 823 F. 3d, at 1204.

Congress' use of the expansive phrase "relate to" shores up that understanding. We have "repeatedly recognized" that the phrase "relate to" in a preemption clause "express[es] a broad pre-emptive purpose." *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 383 (1992); accord *Northwest, Inc.* v. *Ginsberg*, 572 U. S. \_\_\_, \_\_\_, \_\_\_ (2014) (slip op., at 5, 9). Congress characteristically employs the phrase to reach any subject that has "a connection with, or reference to," the topics the statute enumerates. *Morales*, 504 U. S., at 384. The phrase therefore weighs against Nevils' effort to narrow the term "payments" to exclude payments that occur "long after" a carrier's provision of benefits (Brief for Respondent 27 (quoting *McVeigh*, 547 U. S., at 697)). See *Nevils I*, 418 S. W. 3d, at 460 (Wilson, J., concurring); cf. *Hillman* v. *Maretta*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 10) (in the Federal Employees' Group Life Insurance Act context, it "makes no difference" whether state law withholds benefits in the first instance or instead takes them away after they have been paid). Given language notably "expansive [in] sweep," *Morales*, 504 U. S., at 384 (internal quotation marks omitted), Nevils' argument that Congress intended to preempt only state coverage requirements (*e.g.*, for acupuncture and chiropractic services, see Brief for Respondent 36) also miscarries.

The statutory context and purpose reinforce our conclusion. FEHBA concerns "benefits from a federal health insurance plan for federal employees that arise from a

federal law" in an area with a "long history of federal involvement." *Bell*, 823 F. 3d, at 1202. Strong and "distinctly federal interests are involved," *McVeigh*, 547 U. S., at 696, in uniform administration of the program, free from state interference, particularly in regard to coverage, benefits, and payments. The Federal Government, moreover, has a significant financial stake. OPM estimates that, in 2014 alone, FEHBA "carriers were reimbursed by approximately $126 million in subrogation recoveries." 80 Fed. Reg. 29203. Such "recoveries translate to premium cost savings for the federal government and [FEHBA] enrollees." *Ibid.*

B

Invoking our suggestion in *McVeigh* that §8902(m)(1) has two "plausible" interpretations, 547 U. S., at 698, Nevils nonetheless urges us to apply a presumption against preemption because §8902(m)(1) does not clearly cover contractual terms pertaining to subrogation and reimbursement. This argument is blind to *McVeigh*'s context.

In *McVeigh*, we considered the discrete question whether 28 U. S. C. §1331 gives federal courts subject-matter jurisdiction over FEHBA reimbursement actions. See 547 U. S., at 683. Our principal holding was that §1331 did not confer federal jurisdiction. *Ibid.*; see *Bell*, 823 F. 3d, at 1205.

The carrier in *McVeigh*, as part of its argument in favor of federal jurisdiction, asserted that §8902(m)(1) itself conferred federal jurisdiction. See 547 U. S., at 697. In responding to that assertion, we summarized competing interpretations of §8902(m)(1) advanced in briefing, readings that map closely onto the parties' positions here. See *ibid.* (carrier and United States as *amicus curiae* urged interpretation similar to Coventry's; an *amicus* brief in support of beneficiary offered interpretation similar to

Nevils').

We made no choice between the two interpretations set out in *McVeigh*, however, because the answer made no difference to the question there presented. *Id.,* at 698. "[E]ven if FEHBA's preemption provision reaches contract-based reimbursement claims," we explained, "that provision is not sufficiently broad to confer federal jurisdiction." *Ibid.* Because §8902(m)(1) is a "choice-of-law prescription," not a "jurisdiction-conferring provision," *id.,* at 697, we had no cause to consider §8902(m)(1)'s text, context, and purpose, as we do today, see *supra*, at 6–8.[3]

## III

Nevils further contends that, if §8902(m)(1) covers subrogation and reimbursement clauses in OPM contracts, then the statute itself would violate the Supremacy Clause by assigning preemptive effect to the terms of a contract, not to the laws of the United States. We conclude, however, that the statute, not a contract, strips state law of its force.

Without §8902(m)(1), there would be no preemption of state insurance law. FEHBA contract terms have preemptive force only as they "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)," §8902(m)(1)—*i.e.*, when the contract terms fall within the statute's preemptive scope. It is therefore the statute that "ensures that [FEHBA contract] terms will be uniformly enforceable nationwide, notwithstanding any state law relating to health insurance or plans." Brief for United States as *Amicus Curiae* 28 (internal quotation marks omitted).

Many other federal statutes preempt state law in this way, leaving the context-specific scope of preemption to

---

[3] Because the statute alone resolves this dispute, we need not consider whether *Chevron* deference attaches to OPM's 2015 rule.

contractual terms. The Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. §1001 *et seq.*, for example, preempts "any and all State laws insofar as they . . . relate to any employee benefit plan." §1144(a). And the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, limits the grounds for denying enforcement of "written provision[s] in . . . contract[s]" providing for arbitration, thereby preempting state laws that would otherwise interfere with such contracts. §2. This Court has several times held that those statutes preempt state law, see, *e.g.*, *Gobeille* v. *Liberty Mut. Ins. Co.*, 577 U. S. ___, ___–___ (2016) (slip op., at 5–12) (ERISA); *Marmet Health Care Center, Inc.* v. *Brown*, 565 U. S. 530, 532–534 (2012) (*per curiam*) (FAA), and Nevils does not contend that those measures violate the Supremacy Clause, see Brief for Respondent 22.

Nevils instead attempts to distinguish those other statutes by highlighting a particular textual feature of §8902(m)(1): Section 8902(m)(1) states that the "*terms of any contract*" between OPM and a carrier "shall supersede and preempt" certain state or local laws. (Emphasis added.) That formulation, Nevils asserts, violates the Supremacy Clause's mandate that only the "*Laws* of the United States" may reign supreme over state law. U. S. Const., Art. VI, cl. 2 (emphasis added). Nevils' argument elevates semantics over substance. While Congress' formulation might differ from the phrasing of other statutes, §8902(m)(1) manifests the same intent to preempt state law.[4] Because we do not require Congress to employ a

——————

[4] Congress' choice of language is not unique to §8902(m)(1). Several related statutes governing federal-employee and military-member benefits employ similar formulations. See §8959 ("The terms of any contract that relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to dental benefits, insurance, plans, or contracts.");

particular linguistic formulation when preempting state law, Nevils' Supremacy Clause challenge fails.[5]

\*　　\*　　\*

For the reasons stated, the judgment of the Supreme Court of Missouri is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE GORSUCH took no part in the consideration or decision of this case.

––––––––––

§8989 (same for vision); §9005(a) (same for long-term care); 10 U. S. C. §1103(a) (certain state laws "shall not apply to any contract entered into pursuant to this chapter").

[5] Nevils' speculation about the Government's outsourcing preemption to private entities, see Brief for Respondent 24, is far afield from the matter before us. This case involves only Congress' preemption of state insurance laws to ensure that the terms in contracts negotiated by OPM, a federal agency, operate free from state interference.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–149

_____

## COVENTRY HEALTH CARE OF MISSOURI, INC., FKA GROUP HEALTH PLAN, INC., PETITIONER *v.* JODIE NEVILS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MISSOURI

[April 18, 2017]

JUSTICE THOMAS, concurring.

I join the opinion of the Court with one reservation. A statute that confers on an executive agency the power to enter into contracts that pre-empt state law—such as the Federal Employee Health Benefits Act of 1959, 5 U. S. C. §8902—might unlawfully delegate legislative power to the President insofar as the statute fails sufficiently to constrain the President's contracting discretion. See *Department of Transportation* v. *Association of American Railroads*, 575 U. S. \_\_\_, \_\_\_–\_\_\_ (2015) (THOMAS, J., concurring in judgment) (slip op., at 11–22); see also *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 472 (2001). Respondent, however, failed to make that argument. The Court therefore appropriately leaves that issue to be decided, if at all, on remand.